Lewis D. Kraft, use of Thomas & Eels *vs.* S. Fancher & Samuel C. Brown.

*Construction of a Contract—Agency—Usage—Defective Prayer.*

The plaintiff, a resident of Parkersburg, by power of attorney constituted the defendants his agents at Baltimore, for shipping lubricating oil and to accept advances on the same; the plaintiff thereby pledging himself *to abide by their acts, and fulfil any obligation they might make for his account,* the same as if done by himself. The following day the plaintiff addressed a letter of particular instructions to the defendants, in which it was stated that he was desirous of shipping a cargo of lubricating oil to Europe, consisting of about 2000 barrels, *on his own account;* and in order to do so he required an advance of six dollars net per barrel when delivered and inspected in the warehouse of the defendants, the plaintiff thereby authorizing the defendants to negotiate with such parties as they should think proper, for consignment of the oil to agents in Europe to be sold for the account of the plaintiff. By this letter the plaintiff stipulated "in case of loss or disposal of the cargo, *to re-imburse the parties handling the oil,*" and to wait for returns until the whole cargo was disposed of. The letter concluding thus "in conclusion we hereby fully authorize you to act for us as our agents in making arrangements for shipping said cargo, and in obtaining advances; we pledging ourselves *to abide by any and all your acts in reference to the same.*" In pursuance of the authority thus given, the defendants negotiated with the house of B. Bros. shipping merchants, for the consignment of the cargo of oil to the correspondents of the latter in Europe, and for an advance of eight dollars per barrel on the oil—six dollars per barrel to the plaintiff, and two dollars per barrel to defray expenses. This negotiation was consummated and the terms embodied in a letter from the defendants to B. Bros., which contained the following clause: "In case the shipment of said cargo should result in a loss, we hereby bind our principals to repay you for any such loss, *and to hold you harmless against any such loss,* resulting from the sale of said cargo of lubricating oil." Under the contract the defendants received from the plaintiffs 2132 barrels of oil, of which 1579 barrels were shipped to Europe, and on which shipment B. Bros. advanced eight dollars per barrel. The other 553 barrels of oil remained in the warehouse of the defendants. After the shipment, but before disposal of

Kraft *vs* Faucher & Brown.

the cargo, B. Bros. made several demands of the defendants as agents of the plaintiff, for margins as indemnity for what was supposed to be over advances, but without avail, until the 4th of March, 1874, when the defendants placed in the hands of B. Bros. a warehouse receipt for the 553 barrels of oil, expressing on its face that it was as collateral security for advances made on the 1579 barrels of oil shipped as above. In an action of trover brought by the plaintiff against the defendants to recover said 553 barrels of oil, proof was offered on the part of the defendants, that in the shipping business in the City of Baltimore there is a general, uniform and well established usage existing, under which when advances have been made on merchandise, and a shrinkage occurs, or loss is apprehended, the party making the advance can call for a return of part of the advance as indemnity, and the party to whom the advance was made must put up either additional merchandise or money. HELD:

1st. That upon the terms of the authority delegated by the plaintiff to the defendants, the contract made by the latter with B. Bros. for the advance on the cargo shipped was fully embraced by them.

2nd. That under the contract between the defendants and B. Bros., the plaintiff was bound to repay the parties making the advances in the event of loss, and to hold them harmless against any such loss, but the contract being silent as to the mode and manner of indemnification, and as to the time when it could be demanded, such indemnification, independently of all usage or custom on the subject, could not be called for until the loss actually occurred and was ascertained.

3rd That a well established usage or custom in the trade might supply what had been omitted in terms by the parties themselves.

4th. That the plaintiff, by authorizing the defendants to make the contract of shipment at Baltimore, must be taken to have contemplated the operation of all such well established and uniform usages and customs as belonged to and governed the trade there.

5th. That there was no such repugnance or conflict between the terms of the contract made with B. Bros. and the usage or custom proved by the defendants, as to require the evidence of such usage to be rejected.

6th. That the act of delivering the warehouse receipt, and holding the oil as collateral security for the advances made on the shipment, must be regarded as incident, and as having reference, to the contract for shipment and the advances procured thereunder, and hence within the authority of the defendants, as agents for the plaintiff.

7th. That a prayer upon the construction of the contract, which denied the right of the plaintiff to recover, disregarding the evidence of the usage or custom, was bad.

8th. That the right of B. Bros. to demand additional margin, as security or indemnification, must depend upon a *reasonable ground* for apprehended loss on the cargo consigned.

9th. That unless this was required by the usage or custom relied on, it could not be sustained by the Courts.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered the three following prayers:

1. If the jury shall find that the paper-writing dated Parkersburg, W. Va., Nov. 21st, 1873, and the letter dated Baltimore, Nov. 22nd, 1873, were written by the defendant Brown, and signed by the plaintiff, and delivered to the defendants, and the plaintiff then shipped from Parkersburg to the defendants at Baltimore, 2132 barrels of oil, and that the defendants wrote to Bonninger Bros. the letters of Dec. 22nd, 1873, and that Bonninger Bros. thereupon shipped to Europe 1579 barrels of said oil, and advanced to the plaintiff through the defendants, as agents, upon the oil so shipped by them to Europe, $8 per barrel, leaving 553 barrels in the warehouse of the defendants, and shall further find that on the 4th day of March, 1874, the defendants executed and delivered to Bonninger Bros. the warehouse receipt offered in evidence, and thenceforward assumed to hold the said 553 barrels for Bonninger Brothers, then their verdict should be for the plaintiff.

2. If the jury should find for the plaintiff under his first prayer, their verdict should be for the value of the oil on the 4th day of March, 1874, with or without interest, at their discretion.

3. That the Court exclude from the consideration of the jury, the evidence as to usage, offered subject to exception, and instruct the jury to disregard the same.

And the defendants offered three prayers, as follows:

1. If the jury shall find from the evidence that the two papers offered in evidence, dated respectively on the 21st

and 22nd of November, 1873, were signed and delivered by the plaintiff to the defendants, and that in pursuance of the authority and instructions therein contained, the defendants, on behalf of the plaintiff, obtained the advances spoken of in the evidence upon fifteen hundred and seventy-nine barrels of oil, and that afterwards the defendants were called upon by the party making such advances for additional margin or security, and the defendants, in response to such demand, delivered over on the 4th of March, 1874, to the said party the five hundred and fifty-three barrels of oil spoken of in the evidence, then the plaintiff is not entitled to recover.

2. The defendants offer to prove that a well established custom exist in the port of Baltimore among shipping merchants, that where an advance is made upon a cargo and it afterwards appears there is reason to apprehend a loss upon the goods advanced upon, that the party making such advance has the right to call for such margin as would be sufficient to secure the party so advancing against loss, and this although there may be a contract in writing in which no right is reserved to call for such a margin.

3. If the jury shall find from the evidence that the two papers offered in evidence, dated respectively on the 21st and 22nd of November, 1873, were signed and delivered by the plaintiff to the defendants, and that in pursuance of the authority and instructions therein contained, the defendants, on behalf of the plaintiff, obtained of Bonninger Brothers the advances spoken of in the evidence upon the consignment of 1579 barrels of oil upon the terms mentioned in the letter of defendants to Bonninger Brothers, dated Dec. 22nd, 1873, and if they should further find that there existed in the City of Baltimore at the time last mentioned, a general, uniform and notorious usage or custom among the merchants and shippers of said city, according to which a consignee who has made advances upon consignments is entitled to demand a margin or additional secu-

rity from the owner in case of apprehended loss ; and shall further find that said Bonninger Brothers did apprehend a loss on the said consignment and did demand of the defendants, as agents of the plaintiff, an additional margin or security to save them, the said Bonninger Brothers, from such apprehended loss, and shall further find that in response to such demand, the defendants, on the 4th of March, 1874, delivered over to the said Bonninger Brothers the 553 barrels of oil mentioned in the evidence, then the plaintiff is not entitled to recover, notwithstanding the fact that there was no mention of the right to demand such margin or additional security either in the within authority of the plaintiff to the defendants, or in the contract made in pursuance thereof by the defendants, with said Bonninger Brothers.

The Court (DOBBIN, J.) rejected the prayers of the plaintiff and granted those of the defendants. The plaintiff excepted. The jury rendered a verdict for the defendants, and judgment was entered accordingly. The plaintiff appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, MILLER and ALVEY, J.

*William A. Fisher,* for the appellant.

By the true construction of the contract between the legal plaintiff and the defendants, the defendants were constituted agents of the plaintiff, to procure parties to ship the oil of the plaintiff, and make the necessary advances, and when the shipment and advances had been made, the plaintiff could not be called upon to reimburse any deficiency, if any, until after the *disposal of the cargo.*

The defendants were informed that the plaintiff would require an advance of $6 per barrel, to enable him to make the shipment, and this stipulation would have been rendered nugatory, if the shipper could immediately call on

the plaintiff to return the money under the guise of margins. The whole tenor of the contract, was to authorize the defendants only to stipulate for a settlement of loss or profit, as the case might be, *in full,* when the adventure should be ended. When the shipment had been made, the authority of the defendants to act for the plaintiff, was at an end, except to receive returns. *Story on Agency,* sec. 98.

The contract made by the defendants, on behalf of the plaintiff, with the Bonningers, gave the Bonningers no right to require margin from the plaintiff. It merely bound the plaintiff to *repay* any loss which might result from the sale of the cargo.

The evidence of usage was improperly admitted, as the alleged usage is repugnant to the terms of both the contract between the plaintiff and defendants, and that between the defendants and the Bonningers. The contract is itself clear and unequivocal. *Foley vs. Woodside,* 6 *Md.,* 48–50; *Williams vs. Woods,* 16 *Md.,* 251; *Appleman vs. Fisher,* 34 *Md.,* 543; *Thompson vs. Riggs,* 5 *Wall.,* 679; 3 *Sanford,* 312; *Yates vs. Pym,* 6 *Taunton,* 446; *Blackett vs. Assurance Co.,* 2 *Cr. & Jer.,* 249.

Even if the contract between the defendants and Messrs. Bonninger gave the latter the right to call for a margin, the defendants cannot justify under it, as they had no authority to make such a stipulation.

The delivery of the oil was not made at the request of the plaintiff, or upon any legal liability resting on the defendants to make it. The delivery of the oil was an unlawful act, and a conversion. *Tappin vs. Broston,* 1 *Carr. & Payne,* 112; 2 *Saunders' Plead. & Ev., part* 1, *page* (409;) *Merryman vs. State,* 5 *H. & J.,* 426; *Hall vs. Creswell,* 12 *G. & J.,* 36. It was mere officious inter-meddling by the defendants, and they are not protected. *Story on Agency,* 336.

They had no authority to deliver the oil to Messrs. Bonningers, except by direction of their principal. Their fault is made more conspicuous from the fact that they applied to the plaintiff to put up the margin, before they delivered the oil, and the plaintiff, standing upon his rights under his contract, would not respond to the application. *Howard vs. Tucker,* 1 *Barn. & Adol.,* 712; *Child vs. Mosley,* 8 *Term Rep.,* 614.

*John H. Warner,* for the appellees.

Under the power of attorney, and letters offered in evidence, the appellees had full authority, and were bound, to deliver to Bonninger Brothers, the oil in question. In support of this proposition, it is believed not to be necessary to do more than to refer to *Story on Agency, secs.* 60, 74, 75, 84, 85, 96.

Alvey, J., delivered the opinion of the Court.

This was an action of *trover* brought by the appellant against the appellees for the alleged conversion of 553 barrels of lubricating oil.

The appellees, the defendants below, being warehousemen and shipping agents in the city of Baltimore, were applied to by the appellant, an oil producer or refiner at Parkersburg, West Virginia, to receive consignment of a quantity of lubricating oil, procure advancements thereon, and superintend shipment thereof, on account of the appellant. To accomplish this object, the appellant executed to the appellees a power of attorney, dated the 21st of November, 1873, whereby the appellees were constituted agents of the appellant for shipping cargo or cargoes of lubricating oil, and to accept advances on the same, the appellant thereby pledging himself *to abide by the acts and fulfil any obligation that the appellees might make for his account,* the same as if done by himself. The day after the date of the power just recited, the appellant addressed a letter of

particular instruction to the appellees, in which it is stated that the appellant was desirous of shipping a cargo of lubricating oil to Europe, consisting of about 2000 barrels, *on his own account;* and in order to do so he required an advance of six dollars net per barrel, when delivered and inspected in the warehouse of the appellees. The advance required was to be by acceptance of drafts on the appellees at sixty days, for the six dollars per barrel ; the appellant thereby authorizing the appellees to negotiate with such parties as they, the appellees, should think proper, for consignment of the oil to agents in Europe, to be sold for the account of the appellant, &c. By this letter, the appellant stipulated to allow the usual commissions for handling the oil, and also all warehouse charges and freights, whether ocean or railroad, and, in case of loss, or the disposal of the cargo, *to reimburse the parties handling the oil,* and to wait for returns until the whole cargo was disposed of. The railroad freights and warehouse charges were to be paid from advances that might be procured on the oil, in addition to the six dollars per barrel, and when the cargo was disposed of, and returns made, the appellees were to account to appellant for balance of proceeds ;—the letter concluding thus : "In conclusion, we hereby fully authorize you to act for us, as our agents, in making arrangements for shipping said cargo, and in obtaining advances ; we pledging ourselves *to abide by any and all your acts in reference to the same.* We wish the cargo insured when on board the vessel, at a valuation of ten dollars per barrel."

In pursuance of the authority thus given, the appellees negotiated with the house of Bonninger Brothers, shipping merchants, for the consignment of the cargo of oil to their friends or correspondents in Europe, and for an advance of eight dollars per barrel on the oil ;-- six dollars per barrel to the appellant, and two dollars per barrel to defray railroad freights and warehouse charges. This

negotiation was consummated, and the terms thereof embodied in a letter from the appellees to the Messrs. Bonninger, dated the 22nd of December, 1873.  By this letter, the Messrs. Bonninger were informed that the appellant desired to ship a cargo of lubricating oil to Europe, through the appellees, his agents, but required an advance of eight dollars per barrel, and Bonninger Brothers were requested to make the advance to the appellees for the account of the appellant.  They were informed that the barque " Majestic," was then at the wharf of the appellees, ready to receive the cargo ; and that they would be allowed eight per cent. per annum on all moneys advanced, and a commission of two and a half per cent. on the sale of the cargo ; they, Bonninger Brothers, having the right to consign the cargo to their friends in Europe, and such consignees to be allowed the usual commissions there ;—all accounts and returns to be made to the appellees.  Bonninger Brothers were requested to have the cargo insured, per " Majestic," at a valuation of ten dollars per barrel, and if put in store in Europe, to have the same insured against fire.  This letter concludes thus : " In case the shipment of said cargo should result in a loss, we hereby bind our principals to repay you for any such loss, *and to hold you harmless against any such loss*, resulting from the sale of said cargo of lubricating oil.  The oil is of the best quality ; and oil to be like sample furnished, and free from sediment and water.—It is understood that the commissions of $2\frac{1}{2}$ per cent. to be allowed you, will cover all your charges, except interest on money advanced."

Under the contract, the appellees received by railroad from the appellant, 2132 barrels of oil, of which quantity 1579 barrels were shipped to Europe per the barque " Majestic," and on which shipment the Messrs. Bonninger advanced eight dollars per barrel, according to the terms of the letter above recited ; the other 553 barrels of oil re-

mained in the warehouse of the appellees, being the same for which this suit was brought.

After the shipment, but before the disposal of the cargo, Bonninger Brothers, upon information received of their correspondent in Europe, in regard to the oil, made demand by letter, dated 25th of February, 1874, of the appellees, as agents of the appellant, for $3000, as indemnity or security for what was supposed to be over-advances ; and they continued to make other demands for deposit of margin, but all without avail, until the 4th of March, 1874, when the appellees placed in the hands of Bonninger Brothers a warehouse receipt for the 553 barrels of oil, expressing on its face that it was as collateral security for advances made on the 1579 barrels of oil shipped per barque "Majestic." The oil was still in the warehouse of the appellees, held under this receipt at the time the action was brought ; but was subsequently sold by the appellees, and the proceeds paid over to Bonninger Brothers ; the shipment of the 1579 barrels having resulted in a loss of $9900, over and above all credits.

In April, 1874, the appellant demanded the delivery of the 553 barrels of oil, and the appellees refused, and maintain that they were justified in passing the warehouse receipt to Bonninger Brothers, and in refusing to deliver the oil on the order of the appellant, by fair construction of the contracts recited, and especially so when taken in connection with the well established usage and custom of the trade in which the parties were engaged.

Proof was offered, on the part of the appellees, that, in the shipping business in the City of Baltimore, there is a general, uniform and well established usage existing, under which, when advances have been made on merchandise, and a shrinkage occurs, or loss is apprehended, the party making the advance can call for a return of part of the advance as indemnity, and the party to whom the advance was made, must either put up additional merchandise or money.

On the whole evidence, the appellant propounded three prayers for instruction to the jury. The first was, that, upon finding the facts in regard to the warehouse receipt for the 553 barrels of oil given to Bonninger Brothers, and the demand and refusal, then, by the construction of the contracts in evidence, ignoring the proof of usage, the appellant was entitled to recover. The second was in regard to the measure of damages ; and the third was, that all evidence of usage should be excluded from the consideration of the jury. These prayers were all rejected.

On the part of the appellees, three prayers were offered by them, and which were all granted by the Court. 1st. That if the appellees, on behalf of the appellant, obtained the advance from Bonninger Brothers on the 1579 barrels of oil, and were afterwards called upon by the parties making such advance for additional margin or security, and the appellees, in response to such demand, delivered over the warehouse receipt of the 4th of March, 1874, for the 553 barrels of oil, then the appellant, upon the construction of the contracts in evidence, was not entitled to recover. 2nd. That proof of a well established custom among the shipping merchants of Baltimore, such as that offered in evidence, was admissible, and proper to be considered ; and 3rdly, that, upon finding the facts recited in the first prayer, and also the existence of the usage or custom, such as that described in the evidence, then, upon the construction of the contracts referred to, the appellant was not entitled to recover.

The first question that presents itself on these prayers is, what was the extent of the authority delegated by the appellant to the appellees, in reference to the oil consigned to the latter?

As we have seen, the appellant pledged himself to abide by the acts, and fulfil any obligation that the appellees might enter into on his account. In his letter of the 22nd

November, 1873, he expressly obligated himself to reimburse the parties handling the oil, and therein again pledged himself to abide by any and all the acts of the appellees in reference to making arrangements for shipping the oil, and in obtaining the advances thereon. Upon the terms of the authority thus delegated, we think it plain that the contract made with Bonninger Brothers by the appellees, for the advance on the cargo shipped, was fully embraced by them. And taking this to be clear, the next question is, when, how, and under what circumstances could the Messrs. Bonninger, under the contract, or consistently therewith, claim to be held harmless against loss?

By that contract, the appellant was bound to repay the parties making the advances, in the event of loss, *and to hold them harmless against any such loss.* The contract is silent as to the mode and manner of indemnification, and as to the time when it could be demanded. There is nothing in the transaction to show that the Messrs. Bonninger were understood as assuming any extraordinary risk in respect to the cargo, nor that the transaction was designed to be conducted in any other than the usual and ordinary way, and according to the established course of the trade. If the appellant himself had made the contract, and not through an agent, what could have been demanded of him? In answer to this question we should say, that, independently of all usage or custom upon the subject, for the want of more definite terms in the contract, the indemnification could not be called for until the loss actually occurred and was ascertained. But the parties could have employed more definite and explicit terms than they have done, and we think that a well established usage or custom in the trade may supply what has been omitted in terms by the parties themselves.

It is now well settled, in the absence of any clear expression to the contrary, that he who deals in a particular

market must be taken to deal according to the custom of that market, and he who directs another to make a contract at a particular place must be taken as intending that the contract may be made according to the usage of that place; and, in this last case, it is quite immaterial that the principal himself is unacquainted with the usage or custom with reference to which his agent or factor may deal. *Sutton vs. Tatham*, 10 *Ad. & El.*, 27; *Bayliffe vs. Butterworth*, 1 *Ex. Rep.*, 425; *Pollock vs. Stabler*, 12 *Q. B.*, 765; *Greaves vs. Legg*, 2 *H. & N.*, 210; 1 *Tayl. Ev.*, 183, sec. 148. Here, the appellant, by authorizing the appellees to make the contract of shipment at Baltimore, must be taken to have contemplated the operation of all such well established and uniform usages and customs as belonged to and governed the trade there; and we discover no such repugnance or conflict between the terms of the contract made with Bonninger Brothers and the usage or custom proved by the appellees, as to require the evidence of such usage to be rejected. *Miller vs. Tetherington*, 6 *H. & N.*, 278; 2 *Tayl. Ev.*, 1010, sec. 1062, and cases there cited; *Appleman vs. Fisher*, 34 *Md.*, 553.

The appellant being thus liable to the Messrs. Bonninger on the contract of shipment, according to the established usage of the trade, the next question is, were the appellees, as the appellant's agents, authorized or justified in delivering over the warehouse receipt for the 553 barrels of oil to Bonninger Brothers, and thenceforth holding the oil as collateral security to meet the apprehended loss on the shipment of the 1579 barrels? This question, we think, must be answered in the affirmative. The whole 2132 barrels of oil were consigned to and the 553 barrels held by the appellees, under the contract and power heretofore stated, and the act of delivering the warehouse receipt and holding the oil as collateral security for the advances made on the shipment, must be regarded as incident and as having reference to the contract for ship-

Kraft *vs.* Fancher & Brown.

ment, and the advances procured thereunder, and hence within the agents' authority. If the usage be found to exist, there is, therefore, no just or substantial ground for holding the appellees liable for a conversion of the oil. No wrong whatever, of which the appellant can complain, has been done, but justice and good faith subserved.

In the case of *Child vs. Morley,* 8 *T. Rep.,* 610, relied on for the appellant, there was no evidence offered, or question raised, as to the existence or effect of any custom, and as there was an absence of authority in the broker to make payment of the difference in the price of the stock, his payment was regarded as officiously and voluntarily made, and such as would not give rise to an implied assumpsit by the principal, upon which an action for money paid could be maintained. That case has but little analogy to this.

It results from what we have said, that there was no error committed by the Court below in refusing to grant the prayers on the part of the appellant, as thereby the consideration of the evidence of usage or custom, offered by the appellees, was excluded ; but we think there was error in granting the first of the appellees' prayers, as thereby the right of the appellant to recover was denied, upon the construction of the contracts, irrespective of usage or custom. And as to the third prayer of the appellees, we think that correct, with the amendment that it be distinctly put to the jury to find that there was *reasonable ground* to apprehend loss on the cargo consigned, as the basis or condition upon which the demand could rightfully be made for additional margin or security to save the parties harmless. This we must take to be required by the usage or custom relied on, or otherwise, instead of being founded in the requirement and conveniences of trade, and the good faith of merchants, such usage might be made the means of disappointment, surprise and bad faith, and therefore not to be sustained by the Courts.

The judgment of the Court below will be reversed, and a new trial awarded.

> *Judgment reversed, and
> new trial ordered.*

(Decided 3rd March, 1876.)

MILLER, J., dissented.