# THE OXWELD ACETYLENE COMPANY,

*vs.*

# EUGENE L. HUGHES.

*Agents: declarations of—; implied powers; power to bind principal; traveling expenses.*

An agent cannot by his own declaration extend his powers beyond their prescribed limits.                              p. 440

The attitude of the principal himself must be such as to justify the belief, on the part of a person exercising reasonable prudence, that the agent is clothed with the requisite authority, before the principal can be held responsible for the agent's undertaking in excess of the powers actually delegated.

pp. 440-441

The right of a sales agent to bind his principal for traveling expenses, can not, in general, be inferred from the mere fact, that it was necessary for the agent to travel in his business of soliciting orders.                              p. 443

*Decided June 23rd, 1915.*

Appeal from the Circuit Court for Harford County. (HARLAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Thomas H. Robinson* and *Robert D. Bartlett* (with whom was *Wilfred C. Roszell* on the brief), for the appellant.

*S. A. Williams,* for the appellee.

URNER, J., delivered the opinion of the Court.

The appellant corporation is engaged in the manufacture and sale of acetylene lighting equipments. One of its sales agents was furnished meals, lodging and automobile service by the appellee at an aggregate charge of $402.95. A suit was brought and judgment recovered against the appellant company for the full amount of the expense thus incurred by its agent. The main question to be considered on this appeal is whether the evidence in the record is legally sufficient to support such a liability.

The services for which the appellee claims compensation from the Acetylene Company were rendered in May and June, 1914. About a year previously he had purchased a lighting outfit from the company for installation and use in his house and store in Harford County. This transaction was conducted by Mr. C. S. McMaster, a sales agent of the company, who was then operating in that locality. According to the appellee's testimony, McMaster stated, as an inducement to the purchase, that he expected to be in the county at intervals for a year or more, and that he would employ the appellee at customary rates to convey him by automobile on his trips through the country. It was agreed also that McMaster would board at the appellee's house, when in the neighborhood, at a charge of one dollar per day. There was an additional agreement that the appellee should receive a commission of ten dollars on each lighting plant sold through his aid or influence. Only a few meals, and the use of a team on one occasion, were furnished by the appellee to McMaster, as he made only infrequent visits to the community, but in October, 1914, he wrote the appellee that the company then had an agent at Belair, by the name of C. H. Graves, to whom the writer had mentioned the understanding he had reached

with the appellee and whom he had advised to get in touch with the latter in order to see what business they might together be able to develope. It was not until March of the next year that Graves called upon the appellee, whose residence is some miles distant from Belair, but being too busy to remain at that time, he said that he would return later. Early in May the appellee, having some prospects for sales of lighting plants, telephoned Graves, and, learning that he was then about ready to come, drove to Belair for him the following week. During the period between May 12th and July 1st Graves boarded with the appellee eleven days and was driven by him in his automobile 2,613 miles. The account in suit charges fifteen cents per mile for the motor service and a dollar a day for the board.

Nothing was said at the outset by the appellee or Graves in reference to compensation for the services to be rendered by the former, but it appears to have been assumed that the terms upon which he and McMaster had agreed would apply. A few days after the arrival of Graves the appellee cashed for him a check, drawn by the Acetylene Company to the agent's order, which indicated on its face that it was given for traveling expenses. At the end of each week Graves obtained from the appellee a statement of the amount of the charges for that period in order to include it in his weekly expense report to the company. No payment, however, was made to the appellee on his rapidly increasing account, and he had no communication with the company on the subject while the expense was being incurred. About the first of July Graves was discharged by the company, and on the third of that month the appellee wrote a letter to McMaster in which, after referring to the services we have mentioned, he inquired whether he should still look to McMaster or the company for compensation. Having received no reply to this letter he wrote the company on August 19th requesting payment of an account for $466.33, made out against it as debtor, and described as being "for auto hire and board of Mr. C. H.

Graves, as per arrangement made with Mr. McMaster." The company replied at once denying responsibility for the payment of the claim, and after some further correspondence this suit was instituted.

It is undisputed upon the record that neither McMaster nor Graves had any real authority from the company to make it liable for their expenses. On the contrary, in the written agreement under which they accepted their employment as sales agent it was provided that they should themselves receive from the company a reasonable sum for traveling expenses, and it was stipulated that they should have no power whatsoever to pledge its credit. In the case of McMaster's agency, it is in evidence that, being an experienced salesman and demonstrator, he was called upon occasionally to instruct new agents who were just entering upon their duties. On two of his visits to the appellee's house he was accompanied by a recently appointed salesman whom he was familiarizing with the work. While he was allowed an extra commission for this service, the right to bind the company for expenses was not on that account conferred upon him, but was expressly denied, as we have indicated, by the terms of his contract.

The appellee testified to a statement by McMaster that the company paid for the traveling expenses of its agents, and to assurances by Graves that the company would pay the bill being incurred for his board and automobile trips, but we are not at liberty to consider this evidence upon the question primarily to be determined. The liability of a principal for a debt contracted by a special agent beyond the actual scope of his authority must be sustained, if at all, upon the basis of the principal's conduct or acquiescence, and not merely upon the agent's representations. It is a sound and elementary rule that an agent cannot by his own declarations extend his powers beyond their prescribed limits. The attitude of the principal himself must be such as to justify the belief, on the part of a person exercising reasonable prudence, that

the agent is clothed with the requisite authority, before the principal can be held responsible for the agent's undertakings in excess of the powers actually delegated. *Brager* v. *Levy,* 122 Md. 560; 31 *Cyc.* 1331; 2 *Corpus Juris,* 573.

In this case we find no evidence of any conduct on the part of the appellant company from which could be properly inferred the recognition by it of any right of its sales agents to impose upon it such a liability as the one here sought to be enforced. The only communications between the company and the appellee, prior to his demand upon it for the payment of the present claim, related to the purchase and installation of his lighting outfit, and the allowance to him of a special commission, on another sale in which he had participated, in pursuance of an arrangement into which the agent was expressly authorized to enter. The order of purchase signed by the appellee contained a stipulation that it should not become a contract until it received the company's approval. There was also in the order a provision that payments on the purchase could be made only to the company. The appellee was thus given notice that the scope of the agency was intended to be closely restricted. In its letter advising the appellee of the acceptance of his order, the company recognized and referred to Mr. McMaster as its representative, and in a subsequent letter it notified the appellee that it had instructed Mr. McMaster to investigate and correct some trouble with the plant, of which the appellee had complained, but in none of its letters was anything said by the company to justify the inference that its agent was authorized to pledge its credit for board and automobile hire. The expenses which McMaster himself incurred for meals and livery do not appear to have been charged to the company, and they were in fact paid by him personally. When Graves arrived the following year and was received as a boarder and provided with the practically unlimited use of the automobile, no inquiry was made of the company by the appellee as to its agent's right to incur expenses on its credit,

but though the company's remittance direct to the agent, of which the appellee had knowledge, for traveling expenses contracted in the preceding period, was a significant indication of its intention that such charges should be paid by the agent himself, the appellee permitted his claim to remain wholly unsatisfied and to steadily increase in amount until the agency was terminated. During the entire period covered by the claim it appears that Graves was regularly receiving checks from the company for his expenses in accordance with his weekly report. It is admitted by the appellee in his testimony that he probably made a statement, shortly after the claim had fully accrued, to the effect that if Graves failed to pay the bill, he would try to collect it from the company, and the letter, already mentioned, written to McMaster after the discharge of Graves shows very clearly that the appellee was doubtful as to his right to hold the company responsible. While the boarding and automobile account was running the promissory note given by the appellee to the company for his lighting outfit matured, and though he was credited for commissions on a sale he had helped to negotiate, he paid the note without proposing a credit for any part of his present claim. Another fact to be noted is that according to the appellee's own admission he was encouraging and at times urging Graves to visit possible purchasers, in the automobile, because of the appellee's own interest in the commissions on sales made through his co-operation.

Under all the circumstances, thus appearing from the uncontradicted evidence, we are unable to see how the appellee could have supposed from any conduct of the appellant company that it would accept the liability now asserted. It had taken reasonable precautions to avoid being subjected to such a charge, and by no act, word or omission did it induce a contrary understanding. The view has been urged that an inference of authority on the part of the agent to pledge the principal's credit for traveling expenses might have been drawn from the fact that such expenses were incidental to the work

for which the agent was employed. This theory, as applied to a case like the present, would extend the doctrine of apparent authority beyong its due and proper bounds. The right of a sales agent to bind his principal for traveling expenses could not, in our opinion, be fairly or prudently inferred from the mere fact, regardless of other considerations, that it was necessary for the agent to travel in the prosecution of the business of soliciting orders. In *Howe Machine Co.* v. *Ashley,* 60 Ala. 496, it was decided that authority to sell and canvass for the sale of sewing machines, did not, *per se,* imply the power to purchase or hire a horse, to facilitate the agent's movements, at the expense of the principal. It has been held that the pledging of the principal's credit for hotel bills is beyond the scope of a sales agent's apparent authority. *Nicholson* v. *Pease,* 61 Vt. 534; *Grand Ave. Hotel Co.* v. *Friedman,* 83 Mo. App. 491. The only case we have found sustaining a claim against the principal for the hire of vehicles used by the agent in making sales is that of *Bentley* v. *Doggett,* 51 Wis. 224, but the theory of the ruling in that case does not commend itself to our judgment as being a satisfactory principle for general application, and we are convinced that it is not appropriate to the very different state of facts presented in the case at bar.

In the opinion delivered by JUDGE THOMAS in *Brager* v. *Levy, supra,* it is said: "The well-recognized doctrine, that a general authority to an agent cannot be limited by private instructions not known to third persons dealing with him, certainly cannot be applied to a case where no such general authority exists. The general rule is that the power of an agent to bind his principal rests upon the authority conferred upon him by the principal, and persons dealing with an alleged agent are put upon inquiry as to the extent of his authority." There is a quotation in the opinion from the text of 31 *Cyc.* 1331, which refers to the rule that the powers of the agent cannot be enlarged by his own acts without the principal's assent or acquiescence, and states that the liability

of the principal in a particular case is determined "not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had under the circumstances conferred upon his agent." In view of these well-settled principles the only conclusion we have been able to reach upon the undisputed facts in the case is that the evidence is not legally sufficient to support the theory of liability upon which the suit depends.

The question we have considered is raised by an exception reserved to the action of the trial Court in refusing to direct a verdict for the defendant upon the ground just stated. Such an instruction, we think, should have been granted. There are a number of other exceptions in the record, but the rulings they embrace need not be reviewed, as the views we have expressed determine the controlling question in the case and will result in the reversal of the judgment without a new trial being awarded.

In disposing of the costs of the appeal we think it proper to notice the fact that the record is much larger than necessary for the due presentation of the question desired to be raised. The importance of abbreviating records for appeals, in compliance with the rules of this Court, codified as sections 10, 34 and 35 of Article 5 of the Code of Public General Laws, has been recently emphasized in the cases of *White* v. *Bramble,* 124 Md. 403, and *Lowes* v. *Carter,* 124 Md. 686. A large proportion of the testimony, which has apparently been reproduced almost in full from the stenographer's notes, could have been omitted from the transcript without prejudice to any question or interest to be considered. The allowance of the whole cost of the record to the appellant, under the circumstances, would impose an undue burden upon the appellee, and we shall therefore order this portion of the costs to be equally divided.

> *Judgment reversed, without a new trial, and*
> *with costs to the appellant, except as to*
> *one-half of the costs of the record.*