ATLANTIC TRUST COMPANY *v.* SUBSCRIBERS TO AUTOMOBILE INSURANCE EXCHANGE, KEYSTONE INDEMNITY COMPANY, ATTORNEY IN FACT.

*Negligence of Bank—Acceptance of Checks—Endorsements by Agent—Apparent Authority—Contributory Negligence.*

As a general rule, a bank is liable to a principal for the loss of funds resulting from the honoring of checks payable to the principal, which are endorsed by the agent without authority.

p. 474

An·implication of authority in an agent to endorse checks payable to the principal can arise only from the fact that the endorsement was necessary to the performance of the duties actu-

ally conferred on the agent, or was a customary incident of the agency conferred.                                              p. 474

A commission agent of an insurance company, charged with the duty of forwarding premiums to the home office in another state, *held* not to have authority to endorse premium checks payable to the company, as implied from a necessity of his doing so, or as being a customary incident of such an agency.
pp. 474, 475

A principal may so characterize his agent, or permit such an extension of the agent's functions, as to lead third persons reasonably to assume that the agency is general or covers the power in question, and if he so does, the principal cannot assert that he actually limited the agent short of the authority thus apparently given.                                            p. 475

A principal can be bound by the acts of another as agent only in so far as he, the principal, has empowered or permitted the other to represent him, and a mere combination of circumstances, without the principal's participation, which may mislead third persons, however reasonably, into a false inference of authority, cannot extend the agency.                          p. 475

The mere designation of the agent of an insurance company as resident manager of a single field office of the company is not ground for a reasonable inference that he is a general agent, or empowered to endorse and bank the principal's checks.  p. 476

The fact that the agent of an insurance company had in his office a rubber stamp which could be used for indorsing checks, the existence of which was however not shown to be known to the company, did not invest the agent with apparent authority to endorse checks payable to the company.                p. 476

The receipt by an insurance company of its agent's personal checks, in payment of premiums due it, did not charge the company with notice that the money in the agent's personal account came from the deposit of checks payable to the company and endorsed by the agent, so as to justify a finding of apparent authority in the agent to make such endorsements, it appearing that the agent was expected to use his personal checks as a means of remitting cash premiums collected, and the natural inference of the principal being that the checks represented this cash.                                                       p. 476

A principal is, as a general rule, under no duty to strangers to keep a watch over his agent's transactions, in order to prevent unauthorized endorsements and misappropriations, and principals may rely upon bankers to avoid honoring endorsements by an agent to whom they have given not even apparent authority.                                                    p. 477

An insurance company was, as against a bank honoring unauthorized endorsements by the company's agent, not guilty of lack of ordinary care in failing to make, for a period of five months, covering such misappropriations, an audit or investigation which would have informed the company thereof.              p. 477

*Decided April 8th, 1926.*

Appeal from the Superior Court of Baltimore City (FRANK, J.).

Action by Subscribers to Automobile Insurance Exchange, for whom the Keystone Indemnity Company is attorney in fact, against the Atlantic Trust Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*William D. Macmillan* and *Richard F. Cleveland,* with whom were *Semmes, Bowen & Semmes,* for the appellant.

*Clifton S. Brown,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

This is an appeal, by a corporation engaged in banking, from a judgment procured against it by the appellees for amounts misappropriated by their agent, by endorsing checks drawn to their order and depositing them in his private, individual checking account in the trust company, and then checking the money out for his own purposes. The trial court, in its rulings on prayers for instructions and on objections to testimony, held that there was no express or

implied authority in the agent to endorse and deposit the checks as he did, and excluded from the consideration of the jury evidence offered to show apparent authority for such endorsement and deposit, and to show acquiescence, estoppel, and contributory negligence on the part of the plaintiffs. The appellant contends that there was evidence for the consideration of the jury on these defenses.

The appellees were engaged in issuing insurance on automobiles, and had their home office in Philadelphia. They had an office or agency in Baltimore, and John W. Leland was their resident manager in that office. During the time with which the suit is concerned he was paid by commissions, and himself bore all the expenses of the Baltimore office. He testified for the defendant, now the appellant, and said his duties were to solicit business, and to collect and remit premiums. He was paid his commissions semi-monthly, by check from the home office. The premiums were paid to him sometimes in cash and sometimes by check; the cash so received, he was, according to the regular practice, supposed to forward by his own personal check. He had no actual authority to endorse the checks made out to his principal. And this testimony agreed with that given for the plaintiffs, or appellees.

In July, 1922, Leland opened a private checking account with the trust company, in the name of "John W. Leland—Signature: J. W. Leland," and had noted at the bottom of the signature card, by way of identification, that he was resident manager of the Auto Insurance Exchange. In December and January he forwarded his company four checks on this account, for $533.42 in all, for cash premiums collected, and those personal checks were deposited by the company without comment or inquiry. Between February and July, 1923, he endorsed thirty-six checks payable to his principal, by stamping the name: "Automobile Insurance Exchange, by Exchange Operators, Inc.," with a rubber stamp he found in the office when his agency began, and writing after it "J. W. Leland, Res. Manager"; and the

trust company collected and deposited these to his private account, without further indorsement. Leland then checked the money out for his office and living expenses, according to his evidence, and has not since made the loss good.

The suit is founded, of course, on the general rule that a bank is liable to a principal for the loss of funds resulting from the honoring of checks payable to the principal and endorsed by the agent without authority. *Nat. Union Bank v. Miller Rubber Co.,* 148 Md. 449; *Standard Steam Specialty Co. v. Corn Exchange Bank,* 220 N. Y. 478; *Oklahoma State Bank v. Galion Iron Works,* 4 Fed. (2d.) 337. Authorities collected in a note, 12 A. L. R. 111; article on *"Participation in a Breach of Trust,"* 34 Harvard Law Rev. 454, 474. There having been no actual authority from the principal here, the only questions raised are those of the legal sufficiency of evidence to support the defenses of implied or apparent authority in the agent and estoppel of the principal, or of negligence on the principal's part.

An implication of authority to endorse the principal's checks could arise only from the fact that the endorsement was necessary to the performance of the duties actually conferred on the agent, or was a customary incident of the agency conferred. *Bortner v. Leib,* 146 Md. 530, 538. But we do not understand it to be contended that it was a necessary incident to Leland's actual duties, and the facts in evidence would not support such a contention. He was, actually, only a commission agent, charged with the duty of forwarding premiums to the home office; and there would seem to have been no necessity for his endorsing the checks payable to the company and banking them here. *Bortner v. Leib, supra; Roland v. People's Bank,* 134 Md. 218, 220; *Jackson Paper Mfg. Co. v. Commercial Nat. Bank,* 199 Ill. 151; *Lonier v. Ann Arbor Savings Bank,* 162 Mich. 541; *Robinson v. Chemical Nat. Bank,* 86 N. Y. 407; *Porges v. United States Mtge. and Trust Co.,* 203 N. Y. 181; *Schaap v. State Nat. Bank,* 137 Ark. 251; *Doeren v. Krammer,* 141 Minn. 466; *Pluto Powder Co. v. Cuba City State Bank,* 153

Wis. 324. There was no evidence offered to show that it was customary for such agents to have this authority. *Kraft v. Fancher,* 44 Md. 204, 216; *Third Nat. Bank v. Boyd,* 44 Md. 47, 63.

But the appellant contends that the agent might be found to have been invested by the appellees with apparent authority to indorse the checks, by their designating him as "resident manager," by having in the office a rubber stamp which could be used for endorsing checks, and by receiving his checks on this personal account in payment of premiums received. The testimony was that upon these facts the officials were misled into believing that Leland had authority to endorse and bank the company's checks as he was doing. A principal may so characterize his agent, or permit such an extension of the agent's functions, as to lead third persons to assume reasonably that the agency was general, or covered the power in question; and, if he does so, the principal will not be heard to say that he actually limited the agent short of the authority which he had thus apparently given. *Eastern Shore Brokerage Co. v. Harrison,* 141 Md. 91, 100; *Brager v. Levy,* 122 Md. 554, 560; *Oxweld Acetylene Co. v. Hughes,* 126 Md. 437, 440; *Eversole v. Maull,* 50 Md. 95, 104; *Whitten v. Bank of Fincastle,* 100 Va. 546; *Burstein v. Sullivan,* 134 App. Div. (N. Y.) 623; 12 A. L. R. 126 and 127. This result may be viewed as the consequence either of a holding out, or of an estoppel to set up an actual limitation of the agency in conflict with the holding out; it is the same rule viewed one way or the other. *Andrews v. Clark,* 72 Md. 396, 436; *Brager v. Levy, supra.* But it is a representation or holding out by the principal that so extends the agency, not any mere combination of circumstances which may, without the principal's participation, mislead third persons, however reasonably, into a false inference of authority. It is the attitude of the principal which determines the question. *Oxweld Acetylene Co. v. Hughes, supra.* The controlling rule is that a principal can be bound by the acts of another as

agent only so far as he, the principal, has empowered or permitted the other to represent him; and if the banker has been misled by an appearance of authority not known and acquiesced in by the principal, and so has accepted unauthorized endorsements, the banker is answerable for the loss.

In our opinion, the mere designation of an agent as resident manager (of an insurance company, at least) could not be held ground for a reasonable inference that he was a general agent, or was empowered to endorse and bank the principal's checks. It seems to us that the title of resident manager of a single "field" office of an insurance company carries no such meaning. *Jackson Paper Mfg. Co. v. Commercial Nat. Bank, supra;* 12 A. L. R. 126 and 127. As to the rubber stamp used for the endorsements in this case, the evidence fails to show that the principal had any knowledge of its existence. And while the receipt by the principal of the agent's personal checks, in payment of premiums due the principal, would carry notice of the existence of the personal account, it could not be regarded as carrying notice that the money in the account came from the deposit of the principal's checks, endorsed by the agent, because all the evidence is that the agent was expected to use his personal checks as a means of remitting cash premiums collected, and the natural inference of the principal would consequently be that the checks represented this cash. The practice might, perhaps, easily mislead a banker, but it could not be held, under the circumstances, to signify that the principal acquiesced in the endorsement of its checks and the deposit of the amounts in the agent's private account. Therefore, we think, it could not have been found by the jury, from the facts in evidence or offered in evidence, that the appellant was misled by "the attitude of the principal himself," which is the only ground for binding the principal by the agent's acts (*Oxweld Acetylene Co. v. Hughes, supra*), so there was no sufficient support for the defenses set up, and the trial court acted correctly in excluding them.

There was an additional defense upon contributory negligence on the part of the principal in failing to make an audit or investigation which would have informed them of the agent's unauthorized practice, and so have enabled them to stop it, and save both innocent parties from loss.  But while there may perhaps be cases in which a failure of the principal to audit an agent's books or make an investigation of his transactions will, under special circumstances, amount to contributory negligence, we think no such contributory negligence could be found on the facts in this case.  In the first place, it is held, as a general rule, that a principal is under no duty to strangers to keep a watch over his agent's transactions in order to prevent unauthorized endorsements and misappropriations.  However hard the burden of it may sometimes be for bankers, the general rule undoubtedly is that principals may rely upon bankers to avoid honoring endorsements by an agent to whom they have given not even apparent authority.  *People v. Bank of North America,* 75 N. Y. 547, 561; *Wizard Oil Co. v. U. S. Express Co.,* 265 Ill. 156, 161; *Shepard & Morse Co. v. Eldridge,* 171 Mass. 516, 528.  *Cf. Andrews v. Clark,* 72 Md. 396, 435 to 437.  And irrespective of the lack of duty to the appellant, there would seem to be no sufficient ground for a finding of lack of ordinary care in the mere fact that no audit or investigation was made during the five months covered by the misappropriations here.

> *Judgment affirmed, with costs to the appellees.*