**BERRYHILL v. ELLETT et al.**

No. 743.

Circuit Court of Appeals, Tenth Circuit.
April 1, 1933.

Ben B. Blakeney, of Oklahoma City, Okl. (Wallace & Wallace, Tom Wallace and Wayne Lasater, all of Sapulpa, Okl., and Creekmore Wallace, of Oklahoma City, Okl., on the brief), for appellant.

N. A. Gibson, of Tulsa, Okl., for appellee Elmer S. Emmert.

Villard Martin, of Tulsa, Okl. (Geo. S. Ramsey, Edgar A. de Meules, and Garrett Logan, all of Tulsa, Okl., on the brief), for appellee Northwestern Mut. Life Ins. Co.

Before LEWIS, PHILLIPS, and Mc-DERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

On July 8, 1926, the Insurance Company issued to Berryhill its policy of life insurance for the face value of $150,000. The first annual premium of $7,264.50 was payable on or before the date of the policy, and the remaining premiums were payable on or before July 8 of each year thereafter until ten full years' premiums were paid, or until the prior death of the insured.

Emmert was the general agent of the Insurance Company for eastern Oklahoma, and Arkansas. Ellett was the district soliciting agent for the Insurance Company under a contract entered into between him and Emmert.

The policy was purchased through Ellett as district agent. It contained the following provision:

"All premiums shall be payable in advance at the Home Office of the Company in Milwaukee, Wisconsin, or to an authorized agent upon delivery of a receipt signed by the President or Secretary of the Company and countersigned by the agent."

The agent negotiating the insurance however was authorized to collect the first premium upon delivery of the policy.

In July, 1926, on delivery of the policy, Berryhill paid Ellett the first premium by executing and delivering to him his personal note in the sum of $7,264.50. Ellett negotiated the note, deducted his commission from the proceeds, and paid the balance to Emmert.

In May, 1927, Berryhill, through his agent Anderson, inquired of Ellett whether the Insurance Company would allow a discount if he paid the 1927 premium before it was due. Ellett took the matter up with Emmert, who informed Ellett that the Insurance Company would not allow a discount. Ellett so informed Anderson, but stated that he would personally allow a discount of $75. Thereupon Anderson gave Ellett a check for $7,264.50, dated May 20, 1927, payable to "C. Grady Ellett, Dist. Agent for N. W. Mutual Life Insurance Co." The check was made in that manner to enable Ellett to cash it personally. Ellett gave Anderson his check for $75 to cover the discount. Neither Emmert nor the Insurance Company had any knowledge of this transaction.

Shortly before the 1928 premium was due, Berryhill negotiated a loan on the policy from the Insurance Company for an amount sufficient to pay the premium for

that year, and executed a policy loan note therefor. At the same time Berryhill executed his personal note to Ellett for the same amount. Ellett negotiated the personal note and applied the proceeds to his own use. Thereafter Berryhill paid Ellett the amount of such policy loan and Ellett delivered to Berryhill the personal note. Ellett failed to remit the amount paid to either Emmert or the Insurance Company. Neither Emmert nor the Insurance Company had any knowledge of such payment until March, 1930.

On July 11, 1929, Berryhill paid Ellett the annual premium due for that year. Ellett had the policy changed to a semiannual premium-paying basis, and remitted the first semiannual premium to Emmert. In January, 1930, Ellett remitted the second semiannual premium to Emmert. Emmert had no knowledge that Ellett had received the full premium payment in July. A premium notice for the second half was sent to Berryhill. This should have put Berryhill on notice that Ellett had not paid the full premium in July, 1929.

In January, 1930, Berryhill informed Ellett that he had a surplus of funds and desired to make immediate payment of the 1930 and 1931 premiums, and asked Ellett what discount he would allow for the payment of such premiums before they were due. After some negotiation, Ellett agreed to allow $950. On January 25, 1930, Berryhill delivered to Ellett two checks of that date, each for $7,264.50, made payable to "C. G. Ellett, Dist. Agt., Northwestern Mutual Life Insurance Company," and Ellett gave Berryhill his personal check for $950 to cover the discount. Neither Emmert nor the Insurance Company had any knowledge of this transaction until March, 1930.

In March, 1930, Berryhill learned that his policy loan had not been paid, and took the matter up with Emmert. Emmert immediately got in touch with Ellett and demanded that he pay such loan. Ellett borrowed $4,500 from his bank and gave his note therefor, endorsed by Emmert. Emmert also made a personal loan to Ellett of $2,100. To secure Emmert on his endorsement and personal loan, Ellett gave Emmert an assignment of two bank accounts aggregating $2,100, certain building and loan stock of the face value of $2,000, a note of the Bartlett Collins Glass Company for $1,042.25, and his contract for commissions on renewals of insurance policies written by him. This contract had theretofore been pledged to Emmert to secure advances of

approximately $6,500, which the latter had made to Ellett. With the proceeds of the two loans, Ellett paid Berryhill's loan from the Insurance Company. He also agreed to pay the 1930 and 1931 premiums when due.

Ellett failed to pay such premiums when due, and Berryhill brought this suit against the Insurance Company and Ellett. The Insurance Company removed the cause to the United States court on the grounds of diversity of citizenship and a separable controversy.

After the removal Berryhill made Emmert a party, and filed an amended complaint in which he set up two causes of action. In the first Berryhill alleged the payment to Ellett of the 1930 and 1931 premiums, that Ellett acted as the agent of the Insurance Company in receiving such premiums, and prayed for a decree adjudging that such premiums had been paid to the Insurance Company. In the second he alleged that the Insurance Company and Emmert by their acts, conduct, and acquiescence had held Ellett out as authorized to receive such premiums before due and allow a discount therefor, and had thereby clothed him with apparent authority to collect such premiums; and prayed judgment against them for $14,493 with interest from January 25, 1930.

At the trial the evidence established without substantial dispute the facts above stated.

The court denied any relief against the Insurance Company and Emmert, and awarded Berryhill judgment against Ellett for $13,579 with interest at 6% from January 25, 1930. Berryhill has appealed.

The expression *apparent authority* is not one of fixed meaning. It is used in legal literature in different senses. Mechem on Agency,[1] § 720.

**Authority** and *apparent authority* are defined in the Restatement of the Law of Agency, Tent. Draft No. 1, as follows:

"Section 9. The authority of the agent is the result of the manifestation by the principal to the agent of the consent of the principal that the agent shall act for the principal."

"Section 10. Apparent authority is the result of the manifestation by one person of consent that another shall act as his agent, made to a third person, where such manifestation differs from that made to the purported agent."

---

[1] Second Edition.

Manifestations of the same consent to both the agent and third persons result in authority rather than apparent authority. Restatement of the Law of Agency, Tent. Draft No. 1, § 46. We use the expressions *authority* and *apparent authority* in the sense above indicated.

(a) Apparent authority may result from a manifestation of consent made to a third person or to third persons, by inference from words or conduct which ordinarily indicate such consent. Restatement of the Law of Agency, Tent. Draft No. 1, § 47. This is sometimes referred to as implied authority. Mechem on Agency, § 708; Sigel-Campion Live Stock Commission Co. v. Ardohain, 71 Colo. 410, 207 P. 82; Moore v. Switzer, 78 Colo. 63, 239 P. 874; Nertney v. National Fire Ins. Co., 199 Iowa, 1358, 203 N. W. 826; Johnson v. Evans, 134 Minn. 43, 158 N. W. 823.

(b) Apparent authority may result from a manifestation of consent made to a third person or to third persons and inferred from words or conduct which, although ordinarily not indicating such consent, cause the third person because of facts known to both parties reasonably to believe that such consent exists, either where the apparent principal intended to cause such belief on the part of the third person, or where he ought to have anticipated that such belief would be caused. Restatement of the Law of Agency, Tent. Draft No. 1, § 47. This is sometimes referred to as agency by estoppel. Mechem on Agency, § 722; Reifsnyder v. Dougherty, 301 Pa. 328, 152 A. 98.

In cases falling within (a), apparent authority is inferred from other facts proven. It is apparent authority circumstantially proven. Koivisto v. Bankers' & Merchants' Fire Ins. Co., 148 Minn. 255, 181 N. W. 580; Nertney v. National Fire Insurance Co., supra. Hence it is not essential that the person seeking to establish the authority should actually have known and relied upon the circumstances from which the inference of authority or apparent authority in fact is drawn. Mechem on Agency, §§ 717, 722; Murphy v. W. H. & F. W. Cane, 82 N. J. Law, 557, 82 A. 854, Ann. Cas. 1913D, 643; Blake v. Domestic Mfg. Co., 64 N. J. Eq. 480, 38 A. 241, 255–258; Williams v. Mitchell, 17 Mass. 98; Sigel-Campion Live Stock Commission Co. v. Ardohain, supra; Moore v. Switzer, supra.

In cases falling within (b), the basis for the apparent authority is that the person asserting it was led because of the special circumstances reasonably to rely on its existence. In other words, the authority is grounded on estoppel. Hence it is essential for the person asserting it to prove that he knew of and relied on such circumstances. Mechem on Agency, §§ 722, 724; American Nat. Bank v. Bartlett (C. C. A. 10) 40 F. (2d) 21, 24; Moore v. Switzer, supra; Deane v. Big Springs Distilling Co., 138 Md. 388, 113 A. 891, 894; Domasek v. Kluck, 113 Wis. 336, 89 N. W. 139, 140; Cauger v. Gray Motor Co., 173 Minn. 370, 217 N. W. 347, 348; Cannon v. Long, 135 Wash. 52, 236 P. 788, 789; Allen v. San Francisco Wholesale Dairy Produce Exchange, 59 Cal. App. 93, 210 P. 41, 42.

As against the principal, in cases falling within either (a) or (b), the apparent authority must be predicated upon words or conduct of the principal. The words or conduct of the agent by themselves are insufficient. If the latter are relied upon, it must be shown that the principal had knowledge of and acquiesced in them. Mechem on Agency, § 725; Atlantic Trust Co. v. Subscribers to Automobile Ins. Exchange, 150 Md. 470, 133 A. 319, 321; Cowles v. Cowles, 80 N. H. 530, 120 A. 76, 79; Chamberlain v. Amalgamated Sugar Co., 42 Idaho, 604, 247 P. 12, 14; Butler v. Marsh, 66 Colo. 45, 178 P. 569, 570; Sigel-Campion Live Stock Commission Co. v. Ardohain, supra; Moore v. Switzer, supra; American Trust & Sav. Bank of Waterloo v. De Jaeger, 191 Iowa, 758, 183 N. W. 369; Maryland Casualty Co. v. Moon, 231 Mich. 56, 203 N. W. 885, 887.

Ellett collected the 1929 premium on the policy and remitted it to Emmert in two instalments. He also collected premiums on other policies from time to time and remitted them to Emmert. On receipt of such remittances Emmert mailed the premium receipt, duly signed by the president or secretary of the Insurance Company and countersigned by him, to Ellett for delivery to the policyholder. But the transaction between Berryhill and Ellett in January, 1930, was not an ordinary collection of an annual premium when due. It was the receipt of the 1930 premium six months before it was due, and the 1931 premium eighteen months before it was due, and the allowance of a discount on account of the payment of the premiums before their due dates. The discount was allowed by Ellett personally. It was not unlike the transaction between Anderson and Ellett with respect to the 1927

premium. The question presented therefore is, did Ellett have authority or apparent authority to accept payment of a premium before it was due and to allow a discount for such payment.

The quoted provision of the policy was an express limitation on the power of agents to collect premiums, and gave notice thereof to the policyholders. Only agents having possession of a receipt signed by the president or secretary of the Insurance Company were authorized to collect such premiums. Therefore, neither Emmert nor Ellett had authority to collect a premium for which he did not have the official receipt duly signed, and Berryhill was charged with notice of this limitation on their authority by such policy provision.

There were no words or conduct on the part of either the Insurance Company or Emmert from which an inference of authority in Ellett to receive a premium long before it was due and to allow a discount on account of such payment before it was due, could ordinarily be drawn.

The receipt of the 1927 premium in May of that year and the allowance of a discount on account of the payment of such premium before it was due by Ellett, was not a relevant special circumstance, because it was not known to either the Insurance Company or Emmert. Moreover, Berryhill's agent Anderson was advised at the time of the 1927 transaction that the Insurance Company would not allow a discount for the payment of a premium before it was due. Hence it would not have been reasonable for Berryhill to have relied thereon.

It follows that the January, 1930, transaction was purely a personal one between Berryhill and Ellett, and Ellett alone is responsible for his failure to pay the 1930 and 1931 premiums.

The decree is therefore affirmed.