JOSEPH DEANE ET AL., TRADING AS TIDEWATER AND OLD DOMINION DISTRIBUTING COMPANY,

*vs.*

## .. BIG SPRING DISTILLING COMPANY.

*Authority of Agent—Evidence—Travelling Salesman—Putative Agency—Opinion of Witness.*

In .the absence of independent proof of facts from which the agency. may be inferred, agency cannot be proved by the unsworn declarations of the agent.　　　　　　　　　　p. 393

That one was a salesman employed by defendant to sell its products did not *per se* warrant the inference that he was authorized to make a contract of sale binding his employer without the latter's approval or acceptance.　　　　　　p. 393

That of two orders given at one time by plaintiff to defendant's travelling salesman, defendant accepted one while refusing the other, and that in the case of sales by such salesman to others, there was not always a formal acceptance by defendant of the order, do not show authority in the salesman to make a binding contract of sale.　　　　　　　　　　p. 394

That a witness had frequently bought goods from defendant through the latter's travelling salesman, and that usually there was an "acknowledgment of acceptance," but "sometimes" there was not, and that, when another witness had ordered goods through such salesman, they had been shipped, do not show that such salesman was authorized to make absolute contracts for the sale of defendant's goods, or that he was held out to the public as having such authority.　　　　　　　　p. 394

In order that plaintiffs might invoke the doctrine of putative agency, or agency by estoppel, it was incumbent on them to show that they knew of facts warranting the inference that such an agency existed and were misled by them.　　　　p. 395

It was proper to refuse to allow a witness, who had placed orders with defendant, through the latter's salesman, to be asked whether it was "necessary to have those orders confirmed," this merely calling for the opinion of the witness as to the scope of the salesman's employment. p. 397

*Decided April 8th, 1921.*

Appeal from the Superior Court of Baltimore City (SOPER, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ATKINS, and OFFUTT, JJ.

*David Ash,* with whom was *Daniel Ellison* on the brief, for the appellants.

*Edgar Allan Poe* and *Carl R. McKenrick,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the court.

In 1918, the Big Spring Distilling Company of Louisville, Kentucky, was engaged in the manufacture and sale of whiskey, and to aid in selling its product it employed salesmen to solicit orders therefor. At the same time the appellants, trading as the Tidewater and Old Dominion Distributing Company, were engaged in the general wholesale liquor business in Baltimore, Maryland.

On October 18th of that year Harry Brown, a salesman employed by the appellee, undertook on behalf of his employer to sell to the appellants 1,000 cases of whiskey, which were to be ready for shipment October 24th, 1918, and at the same time he took from the appellants their check for $2,000 in part payment for this whiskey. Brown at once notified the appellee of what had been done and it immediately telegraphed him that it would not accept the order. Brown told the appellants that he had been so notified, and on October

21st the appellee itself returned the check for $2,000 to appellants and notified them directly that it would not accept the order for the 1,000 cases of whiskey. The appellants however insisted that the appellee had contracted through its agent, Brown, to sell them the whiskey and they demanded performance of the contract. The appellee on the other hand did not recognize Brown's authority to contract for it, and did not admit that there was any contract at all for the sale of one thousand cases of whiskey and refused to make any shipments on account thereof. After some further correspondence the appellants brought this action in the Superior Court of Baltimore City to recover for the breach of the alleged contract. The declaration, in addition to the common counts, contains a special count, setting up the supposed contract to which we have referred.

At the trial of the case, at the conclusion of the plaintiffs' testimony, the jury, at the direction of the court, found their verdict for the defendant, and it is from the judgment on that verdict that this appeal was taken.

The record contains thirty-seven exceptions, of which one, the thirty-seventh, relates to the court's ruling on the prayers, and the others to rulings on questions of evidence.

The rulings on the prayers rest upon the proposition that there is not in the case evidence legally sufficient to show that Brown was authorized to make the contract sued upon on behalf of the appellee, and whether there is in the case any such evidence is the important question presented by this appeal.

The testimony relied upon to show Brown's agency is in substance as follows:

When Brown approached the appellants in October, 1918, to sell them whiskey, they had known him for a couple of years and knew he was a salesman for the appellee, but had never before had any business relations with him. On that occasion he quoted them a price on whiskey of $16.50 per case of quarts. The appellants thereupon ordered 1,340 cases from him. These 1,340 cases were divided into two lots: one of 340 cases, and one of 1,000 cases, which were dealt with

separately, and were to be shipped separately. The first lot
of 340 cases was paid for in full by certified check and a re-
ceipt for the payment given. This order was accepted and
filled by the distilling company without change, except that
the time for shipment was changed by agreement as a result
of freight conditions. The second lot ordered was to contain
1,000 cases, and was to be ready for shipment on October
24th, 1918. The appellants gave Brown their check drawn
to the order of the appellee for $2,000 in part payment of
the purchase price of $16,500 and took from him a receipt
therefor signed "Big Spring per H. Brown." Brown re-
turned to appellants a day or two later and showed them a
telegram from the appellee to Brown which contained the
following statement: "We cannot accept order one thousand
cases quarts at sixteen fifty. Seventeen * * *."

The appellants then received a letter from appellee, read-
ing in part as follows: "Your order submitted through our
Mr. Brown for 1,000 cases quarts bottled in bond. We are
unable to accept; therefore, we return your check for $2,000
deposit." The letter also referred to the shipment of the 340
case lot, and inclosed with it was the check for $2,000. After
telegraphing directions as to the shipment of this last named
lot, the appellants on October 25th wrote the appellee in part
as follows: "We are returning to you our original check for
$2,000 on our order of one thousand cases of quarts at $16.50,
and instead of compelling you to comply with the terms of
the order for immediate shipment, we shall grant you three
weeks' time within which to make shipment." In reply to
this letter the appellee referred appellants to the letter of
October 21st, and again returned the check, which appears
on that occasion to have been retained. On November 16th,
1918, appellants wrote appellee demanding performance of
the alleged contract for the sale of 1,000 cases of whiskey
and threatening to place the matter in the hands of their at-
torney unless appellee shipped the order. In addition to the
facts stated above, Joseph Dean, one of the plaintiffs, testi-

fied that his firm had never done business with Brown before, although they had known him for a couple of years; that at the time they gave the order for the 1,000 cases of whiskey, Brown told him he represented the Big Spring Distilling Company and was a "member of the concern," and that no confirmation of orders given to him was necessary; that when Brown showed appellants the telegram from appellee refusing to accept the order for 1,000 cases of whiskey, he told them they need not bother about it, that he was a "member of the concern" and they would get their goods; and that they were induced to order this whiskey by Brown's representations that no confirmation of orders given him was necessary; that the two orders for the 340 cases and for the 1,000 cases were given at the same time, but the payments on account of them were made by two checks, only one of which, that paying for the 340 cases, was certified, that the other check was not certified on Brown's suggestion, and because a bill of lading was to be attached to the shipment of 1,000 cases which would be taken up when the goods arrived. Other witnesses, in addition to corroborating Dean's testimony as to Brown's statements, testified that they had, prior to the transaction referred to in this case, bought whiskey from the appellee through Brown; that usually there was an acceptance of the order on which the goods were shipped, but "sometimes" there was no definite acceptance.

At the close of the plaintiff's case the court, upon the appellee's motion, struck out all the testimony of the plaintiff's witnesses as to statements made by Brown as to his agency and the extent thereof, and this ruling, which is the subject of the thirty-sixth exception, we will consider in connection with the first, twenty-ninth and thirty-first exceptions, all of which relate to the exclusion of Brown's statements as to the scope and character of his agency.

Brown himself did not testify in the case. The testimony excluded was what the witnesses recalled of statements they had heard him make. Obviously no statement made by

Brown could bind the appellee unless Brown were its agent and the statement referred to some matter within the scope of his agency. Until, therefore, it appeared from the evidence in the case that Brown was the appellee's agent authorized expressly or by implication to bind it by a contract in its name for the sale of its product, no admission or statement made by him and referred to by the witness is material to any issue involved in this case. Agency cannot be proved by the unsworn declarations of the agent "in the absence of independent proof of facts from which the agency may be inferred." *American Fidelity Company* v. *State,* 135 Md. 333; *Roland* v. *People's Bank,* 134 Md. 218; *Wilson* v. *Kelso,* 115 Md. 171; *Nat. Mech. Bk.* v. *Nat. Bk. of Baltimore,* 36 Md. 20; *Oxweld Acetylene Co.* v. *Hughes,* 126 Md. 440. The question, then, is whether, excluding Brown's statements, there is any legally sufficient evidence in the case of any facts or circumstances from which the inference can naturally and properly be drawn that Brown was the appellee's agent authorized to bind it by contracts for the sale of its product.

The only facts and circumstances material to the consideration of that question, of which there is any legally sufficient evidence in this case, are these: That Brown was a travelling salesman employed by the appellee; that when he took orders at the same time for the sale of two lots of whiskey to the appellants, the appellee accepted the one but refused to accept the other; that Brown had sold whiskey for the appellee to others and there was not always a formal acceptance of the orders in such cases. These facts taken separately or collectively are not sufficient to support an inference that Brown was as the appellee's agent authorized to conclude on its behalf a contract binding it to a sale of its goods. The fact that he was a salesman employed by appellee to sell its products did not *per se* warrant the inference that he was by virtue of such employment authorized to make a contract of sale binding his employer without its approval or acceptance.

*Becker* v. *Clardy,* 96 Miss 301,*Ann. Cas.,* 1912B, 354, 355; 24 R. C. L. 388; *Bauman* v. *McManus,* 75 Kan. 106, 10 L. R. A. (N. S.), 1138; 1 *Mechem on Agency,* par. 861; *Brager* v. *Levy,* 122 Md. 554. Nor was there any proof in the case which can be said to be legally sufficient to show that the appellee had by its conduct or course of business held out Brown to the public as having authority to make binding contracts for the sale of its product without its approval or acceptance. Sol Weiner, a witness for the plaintiff, said that he frequently bought whiskey from the appellee through Brown, and that usually there was an "acknowledgment of acceptance," but "sometimes" there was not; D. L. Richards testified that he had had business with the appellee which he transacted through Brown and when he ordered goods through him they were shipped. This was practically all the testimony as to the appellee's conduct or course of business, and it shows nothing more than that Brown as a travelling salesman took orders for the sale of whiskey for the appellee. There is nothing in it to show that the appellee had authorized him to make absolute contracts for the sale of its goods, or that he was held out to the public by it as having such authority. He was its agent in a sense as every salesman is an agent but, in the absence of express authority, or circumstances from which such authority may be implied, "such an agent has authority only to solicit orders and transmit same to his principal for approval." *Becker* v. *Clardy,* 96 Miss. 301, Ann Cas. 1912 B, 354. But even if it could be inferred that because appellee had at times shipped goods on Brown's orders without formally accepting such orders, in the absence of proof that its general course of business justified the inference that Brown was authorized to contract for it, that would avail the appellants nothing, because there is no evidence that when they dealt with Brown they knew of such sales or were influenced by the manner in which they had been made. There is no evidence whatever that Brown had any express authority to contract for the appellee, and before

the appellants could invoke the doctrine of "putative" agency, or agency by estoppel, it was incumbent upon them to show that they knew of facts warranting the inference that such an agency existed and were misled by them, because "estoppel is a matter personal to the individual asserting it." *Mechem on Agency* (2nd Ed.), par. 245.

The appellants however, contend that the appellee "adopted" and ratified Brown's act when it shipped the 340 cases which were ordered at the same time they ordered the 1,000 cases of whiskey, on the theory that they were both embraced in the same contract, and that by accepting part of the contract the appellee confirmed the entire transaction. Whatever force the legal proposition involved in this theory has, we are not called upon to consider, because it is a pure abstraction unconnected with any evidence in the case. The evidence shows that there were two separate orders, treated as separate orders by both parties. The whiskey was sold in separate lots, paid for separately, and the memoranda as to each of the two lots respectively placed on separate papers. Nor was there in fact any acceptance of either order as originally given. The original order for the 340 cases provided that they should be delivered to the express company "not later than October 19th, 1918." As soon as the appellee was notified of these orders, it sent a telegram dated Oct. 18th to Brown, which he delivered to the appellants, in which it said "Express Company congested accepted no shipments today will ship Tidewater Saturday if they accept We cannot accept order one thousand cases * * *," and on October 21st the appellee in a letter to appellants, after again telling them it would not accept the order for 1,000 cases, informed them that they were holding the 340 cases for them, but that the Express Company would accept no shipments of more than 1,000 pounds, and inquired whether the appellants wanted the order shipped by freight and added "if this is not satisfactory we will be compelled to return this check." In reply to this letter appellants telegraphed instructions for the shipment of the 340 cases, but did not in that telegram refer to

the other order. So that so far from "accepting" the original
orders the appellee definitely refused to accept one, and re-
fused to accept the other unless the time of shipment were
changed, and it was only after the contract as thus changed
was accepted by appellants that any whiskey was shipped on
the 340 case order.

For the reasons stated we find no error in the rulings of
the court involved in the first, twenty-ninth, thirty-first and
thirty-sixth exceptions.

Much of what has been said in connection with the consid-
eration of these exceptions applies also to the court's ruling
in granting the prayers of the appellee, which directed a ver-
dict for it on the theory that there was no evidence in the case
legally sufficient to show that the appellee had contracted to
sell the appellants 1,000 cases of whiskey as alleged in the
declaration.

Without repeating what has been said, in our opinion
Brown had no authority to make the alleged contract which is
the basis of this suit, nor is there any evidence in the case
legally sufficient to show that the appellee either ratified or
accepted it, and in the absence of such evidence there is no
proof in the case of any contract at all between the parties
with reference to the sale of the lot of 1,000 cases of whiskey,
and therefore the prayers to which we have referred were
properly granted.

In view of the conclusion we have reached it becomes un-
necessary to consider in detail the remaining exceptions, all
of which but two relate to such questions of evidence as the
relevancy or materiality of facts relating to the damages re-
sulting to the appellants from a breach of the supposed con-
tract. Since the appellants were not entitled to recover at
all, this evidence was immaterial.

In the course of the trial, counsel for the appellants stated
that a witness then on the stand had testified he had given
one order for 1,340 cases of whiskey. The court then said
it had heard no such testimony. This statement is the basis
of the second exception. Assuming that this exception pre-

sents a question for our consideration, we find no error in the court's action.

A witness for the appellants, who had testified that he had placed orders with the Big Spring Distilling Company through Brown, was asked "was it necessary to have those orders confirmed?" This question, which is the subject of the thirtieth exception, did not call for the witness' knowledge of any fact material to the issues in the case but for his opinion as to the scope of Brown's agency in the transactions which he had had with the witness, and we find no error in the court's ruling in refusing to allow it.

Finding no errors in the rulings presented for our consideration, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs to appellee.*