## Robinson *v.* Ungerleider et al., Appellants.

Argued January 16, 1933, re-argued December 6, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

302

*Morris Wolf,* for appellants.

*Harry Shapiro,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, May 22, 1933:

Defendants are stockbrokers. Plaintiff was their customer. He brought this action to recover the damages which he alleges he sustained by their refusal to execute an order to purchase stock for him, and recovered a verdict for $6,000. From the judgment entered defendants appeal.

On October 24, 1929, plaintiff placed an order with defendants, which they accepted, to purchase for him 300 shares of Radio Corporation of America at 40; 300 shares of the same stock at 32; 500 shares of Montgomery Ward at 50; and 500 shares of Standard Oil of New Jersey at 50. He deposited with defendants $16,000 in Liberty Bonds to secure the loans necessary for the purchases. At the time the order was given the prices of the stocks were in each instance considerably above those named.

On October 29, 1929, the day of the great panic on the stock exchange, when more than sixteen million shares were sold, sometime between eleven o'clock and noon defendants notified plaintiff that they would not carry out his order and that they had cancelled it. Radio Corpo-

ration stock opened on that day at 30 (below the price fixed by plaintiff) and during the day went as low as 26⅞. At the time defendants gave notice of cancellation, the other stocks had not reached plaintiff's figures.

Plaintiff, after receiving the notice of cancellation, called another broker's office on the telephone and endeavored to get him to take his purchase orders, but did not succeed in placing them. Just why does not clearly appear, but apparently because of the panic conditions in the market. He then visited the office of Cassatt & Co., another brokerage firm. He found it crowded, with great excitement prevailing. He testified, "I could not get to the particular customer's man, or the man I wanted to see. So I walked out." He made no further endeavor to place his orders of purchase. Later in the day he received from defendants the Liberty Bonds he had left with them. He subsequently neither bought nor sold any of the stocks mentioned. A clerk who was employed in the Cassatt & Co. office was called by plaintiff to show the conditions of confusion, crowding and excitement in their office on October 29th, and the difficulty in placing orders with them and in their transacting business. Another witness called by plaintiff was a statistician employed by Cassatt & Co. on October 29th, who testified to the same general conditions. Neither of these witnesses said it would have been impossible to have had an order executed; they testified merely that there would have been delay in doing so. A third witness called was the manager of another brokerage firm, who testified in like fashion to the crowded condition of their offices and to the difficulty and delay in getting orders executed. He did not testify, however, that an order could not have been executed. No witness said it was impossible to buy the three stocks mentioned on that day.

On October 29th, after plaintiff received notice of cancellation, there were 46,000 shares of radio stock sold at prices ranging from 26⅞ to 30. With such a volume of

sales it is inconceivable that he could not have purchased the number of shares covered by his order, if he had made a proper effort to do so. In our opinion, what he did in calling one broker on the telephone and visiting the office of another were not sufficient efforts to place his orders. There were other brokers with whom he could have traded. In the instance when he did call at a broker's office, Cassatt & Co., he made no endeavor to place his order. What has been said as to the radio stock applies to Montgomery Ward. His order price for it was 50. After he received notice of cancellation and before the close of the market on that day, there were 66,300 shares of this stock which sold at 50 or lower.

So far as Standard Oil is concerned, plaintiff's purchase price was 50 and only 2,300 shares were sold, in two lots, during the day as low as 50 out of 293,300 shares which were traded in. We think it could not be reasonably or justly concluded that defendants necessarily could have executed plaintiff's order out of the comparatively small number of shares sold at his price.

Appellants challenge plaintiff's right to recovery at all so far as Montgomery Ward and Standard Oil stocks are concerned, taking the position that they had the right to cancel the orders for them at any time before the purchase price was reached. As to the radio stock, their position is that they broke their contract, but that plaintiff has failed to prove any damages and, therefore, the judgment should be reduced to the nominal amount of six cents.

The relation between a stockbroker and his customer is generally recognized as that of agent to principal, although it is true that certain other legal incidents may become involved: Meyer on Stockbrokers & Stock Exchanges, page 249. Particularly is this so when the transaction is to be a cash one and not a marginal account. While the Liberty Bonds deposited by the plaintiff with the defendant were not sufficient to cover the cost of the shares ordered, plaintiff himself testified that

he had made arrangements for delivery of the certificates to his bank which would in turn pay cash for them. "I wanted it to be a cash transaction and not a marginal account."

Agency is a voluntary relationship and may generally be terminated at will by either party. "Where the agency is indefinite in duration the agent may, upon giving reasonable notice, sever the relation at any stage without liability to the principal": Mechem on Agency, page 456. Meyer (page 263) recognizes the right of the broker to decline to execute an order at any time upon giving prompt notice. This is true even in those cases where the broker is carrying a marginal account for the customer.

The reports contain few cases of a refusal by the broker to execute an order. In most of the cases, the broker has neglected to execute the order and has not given notice that he refuses to do so. The reason for this is apparent from a consideration of the fact that the broker's only compensation accrues from his commission when the transaction is made. In Galigher v. Jones, 129 U. S. 193, the court recognized the right of a broker to terminate the agency upon giving prompt notice, even though he was carrying a marginal account. There the broker held stock on a marginal account for his customer. He received an order by telegram to sell this stock at the market and buy certain other stocks. The broker declined to execute this order but communicated his refusal by letter which did not reach the customer until two days later when the customer had already sold short the stock which he thought had been purchased. The court said (page 198) that the broker was "bound to follow the directions of his principal, or give notice that he declines to continue the agency. ...... The plaintiff [broker] should have given *prompt* notice that he objected and declined to make the change. Telegraphic communication was used by the defendant, and no reason appears why the plaintiff could not have used

the same." This decision was subsequently followed in Richardson v. Shaw, 209 U. S. 365, 377, where the court states: "As was said by Mr. Justice BRADLEY, speaking for the court in Galigher v. Jones, 129 U. S. 193, 198, a broker is but an agent, and is bound to follow the directions of his principal or give notice that he declines the agency." It has always been recognized that the customer or principal may cancel an order or withdraw his authority at any time before the order is executed, and this is true whether the contract covers real estate, stocks or other property: Coffin v. Landis, 46 Pa. 426, 433; Sibbald v. Bethlehem Iron Co., 83 N. Y. 378; In re Dickinson, 171 App. Div. (N. Y.) 486. It would seem equitable to allow the agent the same privilege to refuse to execute an order as is possessed by the principal. The defendant in the instant case gave immediate notice to the plaintiff by telephone of its decision to refuse the order and the plaintiff's collateral was returned to him the same day upon request. It is well to repeat that the transaction here contemplated was not upon margin but was to be an outright purchase for cash. The notice by telephone was admittedly received before the Standard Oil or Montgomery Ward stocks had reached the order price. The stock of the Radio Corporation of America had reached the order price before the plaintiff received notice from the defendant company and the latter admits that there was a breach of the contract to purchase this stock; it is, therefore, necessary to determine the measure of damages applicable to the breach.

There are three possible situations which might arise in considering the measure of damages for failure to purchase stock: (1) The customer actually purchases the stock elsewhere, in which case the damages sustained are clearly ascertained; (2) the customer makes no effort to buy the stock elsewhere; and (3) the customer makes an effort to purchase elsewhere but is unable to do so.

In Gurley v. MacLennan, 17 App. Cas. (D. C.) 170, the court held that a customer was not entitled to recover substantial damages for failure to execute an order to purchase stock unless he subsequently made an actual purchase elsewhere. The contrary position was taken in Bushnell v. Curtis, 236 Ill. App. 89. The court there laid down as the measure of damages the difference between the order price and the price at which the customer could have purchased the stock within a reasonable time after he learned of the failure of the broker to execute the order. There have been no other direct decisions upon this point. Meyer (at page 545 et seq.) approves the measure of damages as laid down in Bushnell v. Curtis, supra. It is not clear from the opinion in the Curtis Case whether the damages were awarded upon the theory of loss of profits or upon the doctrine that the plaintiff should be restored to the position he would have been in had there been no breach. The actual result would be the same, whichever theory was followed.

As before stated, the plaintiff's testimony showed that, on October 29th, after he received notice of cancellation, there were 46,000 shares of Radio Corporation sold at or below the order price. It would seem clear that the plaintiff could have purchased the stock in question at or below the order price within a reasonable time after he received notice of the failure to execute his order. This being so, he has shown no substantial damage and, therefore, is entitled to nominal damages only. Plaintiff was bound to take advantage of the opportunity to minimize his loss, and having failed to do so, he is entitled to only such damages as he could not with reasonable efforts have prevented: Jessup & Moore Paper Co. v. Bryant Paper Co., 297 Pa. 483; Scalp Level Coal Mining Co. v. New England Coal & Coke Co., 51 Fed. (2d Series) 223, 224; 8 R. C. L., page 442, section 14.

If the contention be that, due to the extraordinary conditions existing on October 29th, the reasonable time within which the damages are to be ascertained should

extend beyond that day, plaintiff should have introduced competent testimony to show how soon an order could actually have been executed for the purchase of radio stock and the price at which the stock could have been bought at that time. Failing such evidence, he has not borne the burden of proving damages with that certainty ·which the law requires: Western Show Co. v. Mix, 308 Pa. 215; Gaydos v. Domabyl, 301 Pa. 523; Seward v. Penna. Salt Mfg. Co., 266 Pa. 457, 462.

There was no breach of contract as to the Montgomery Ward and Standard Oil stocks. So far as the radio stock was concerned, plaintiff was entitled to recover nominal damages. We, therefore, reduce the judgment accordingly: Netter v. Quick, 302 Pa. 200.

The judgment against defendants is reduced to six cents and costs. So reduced, it is affirmed.

SUPPLEMENTAL OPINION BY MR. JUSTICE SCHAFFER, January 2, 1934:

After careful consideration of the matters presented to us on reargument, we are not convinced that our previous rulings are incorrect. We, therefore, confirm the opinion heretofore handed down and order that judgment shall be entered as therein directed.