**STATE OF DELAWARE, for Use of GENERAL CRUSHED STONE CO. v. MASSACHUSETTS BONDING & INS. CO. et al.**
**Civ. No. 246.**

District Court, D. Delaware.
March 17, 1943.

S. Samuel Arsht (of Morris, Steel, Nichols & Arsht), of Wilmington, Del., for plaintiff.

Frederick P. Whitney, of Georgetown, Del., and John J. Morris, Jr. (of Hering, Morris, James & Hitchens), of Wilmington, Del., for defendants.

LEAHY, District Judge.

This is an action to recover a sum alleged to be due for stone furnished in the construction of a certain highway. Counsel for plaintiffs did not desire a jury trial, and defendants' counsel failed to make a proper request for a jury.[1] The action was heard by the court, which makes the following findings of fact:

1. Defendant McDermott entered into a contract on June 29, 1939, with the Delaware State Highway Department under which he agreed to furnish all material and equipment and to perform all labor required to construct a certain highway between Harrington and Hughes Crossroad in Kent County, Delaware. On the same day, defendant Massachusetts Bonding and Insurance Company, as surety for Mc-

---

[1] Originally, defendants' motion for an order that all issues in the cause be tried by a jury was granted. Later, on plaintiffs' petition for reargument on the motion, I reversed and denied defendants' request for trial by jury. See State of Delaware v. Massachusetts Bond. & Ins. Co., 3 F.R.D. 65.

Dermott, executed a completion bond in favor of the State of Delaware in the amount of $37,500.

2. On June 12, 1939, McDermott entered into a written contract with The General Crushed Stone Company under which the latter agreed to furnish 4,600 tons of Traffic-Bound Crushed Stone at a price of $2.01 per ton f.o.b. cars at Harrington, Delaware, Pennsylvania Railroad delivery, to cover McDermott's requirements under his contract with the Highway Department. With respect to terms of payment, time of delivery, specifications and acceptance of the contract, it was provided:

"Terms of Payment: Cash by last of month next succeeding shipment.

\*     \*     \*     \*     \*

"Time of Delivery: Material to be furnished during the period beginning 6/15/39 and ending 12/31/39. Shipments to be made at the rate of approximately 300 tons per day. Shipping instructions shall be furnished by Purchaser to Seller within a reasonable time before actual shipments are to begin. \* \* \*

"Specifications: Meeting Delaware State Highway Department specifications governing above-indicated work.

\*     \*     \*     \*     \*

"Acceptance: This contract shall not be binding upon the Seller until accepted at Easton, Pennsylvania, by an officer of the Seller."

3. The contract was accepted on behalf of The General Crushed Stone Company at Easton, Pennsylvania, by its Vice-President. Shippers' responsibility ceased with delivery to the railroad carrier.

4. No shipping instructions were given by McDermott during 1939. However, it is conceded, the stone company waived the clause of the contract which provided that the materials were to be furnished during the period ending December 31, 1939. Stone, on the following dates and in the following quantities, was shipped to McDermott:

| Shipping Dates | Number of Cars Shipped | Quantities of Stone (Net Tons) |
|---|---|---|
| 6/14/40 | 11 | 577.90 |
| 6/17/40 | 7 | 343.10 |
| 6/18/40 | 4 | 185.55 |
| 6/19/40 | 1 | 45.80 |
| 6/20/40 | 3 | 134.00 |
| 6/22/40 | 9 | 423.45 |
| 6/24/40 | 6 | 278.55 |
| 6/26/40 | 9 | 400.50 |
| 6/27/40 | 8 | 363.75 |
| 6/28/40 | 4 | 186.15 |
| 6/29/40 | 3 | 133.15 |
| Total June Shipments | 65 | 3,071.70 |
| 7/2/40 | 3 | 139.25 |
| 7/3/40 | 1 | 51.60 |
| 7/6/40 | 4 | 187.00 |
| 7/8/40 | 5 | 231.75 |
| 7/9/40 | 12 | 580.35 |
| 7/13/40 | 5 | 278.05 |
| Total July Shipments | 30 | 1,468.00 |
| | 95 | 4,539.70 |

5. All of the stone shipped met the Highway Department's specifications, was accepted and used by McDermott in the construction of the highway. The price for the stone was $9,124.80, $5,489.09 representing prepaid freight charges paid by The General Crushed Stone Company. The prevailing market price of similar stone during May, June, and July, 1940, was the same as that charged by the stone company to McDermott.

6. Demand was made for payment upon McDermott and the surety company, but neither has paid for the stone shipped. The present action, based upon the surety bond, is by the State of Delaware for the use of The General Crushed Stone Company to recover $9,124.80, plus interest, the price of 4539.7 tons of stone furnished to McDermott. McDermott was permitted to intervene and defend the action.

*Discussion.* (a) For defense, defendants contend that on May 17, 1940, the written contract of June 12, 1939, was modified by Souders, one of use-plaintiff's salesmen, agreeing to deliver 12 cars (approximately 600 tons) of stone to be shipped daily. Defendants, relying on a breach of the oral modification of the written agreement, filed a counterclaim asserting damages of $6,000 resulting from use-plaintiff's delays in shipment.[2]

---

[2] It is not without speculative interest that McDermott's contract with the State Highway Department required completion by October 15, 1939, and that when use-plaintiff entered into its contract with him on June 12, 1939, it anticipated he would require the stone by, at least October or November, 1939—this, during use-

In approaching this phase of the case there are certain guiding principles which have been announced by the courts of this district, viz.: Where an oral modification of an earlier written contract is alleged, and denied by the other party, the one resting on such modification has a heavy burden to establish the fact of modification against the other who denies it.[3] Defendants' evidence in support of the contention that the written contract was modified by Souders on May 17, 1940, falls far short of sustaining the proofs required by the decisional law.

Souders died before trial.

McDermott has neither written memorandum, documentary proof, nor testimony which corroborates his statements respecting his alleged conversation with the deceased salesman.

Use-plaintiff denies that McDermott gave any shipping instructions prior to June 11, 1940. There is in evidence a letter from McDermott dated July 2, 1940, wherein he writes, "We are still waiting for the eight (8) cars per day you promised to ship three weeks ago." Three weeks prior to July 2d was June 11, 1940. Here, McDermott speaks of only 8 cars while the alleged oral modification called for 12 cars. Use-plaintiff's reply letter to McDermott of July 9, 1940, stated: "Our records show that you did not call for shipments on this order until June 13, 1940." McDermott did not reply to this letter.

The testimony of one of defendants' own witnesses—an engineer for the State Highway Department who qualified as an expert in road building—indicates that, if McDermott had more than 10 to 15 men on the job, the roadbed was not ready to receive stone on May 17, 1940. McDermott's payroll records disclose that from May 17 to June 15, 1940, he actually had more men on his payroll (from 27 to 37) than at any time before May 17, 1940,

or after the first shipment of stone arrived on June 17, 1940. The inference from this is that McDermott would not have ordered stone to be shipped until he was ready to use it. This conclusion is supported by the fact that witness Wilson, a testing engineer for the Highway Department, made his first inspection of the stone at use-plaintiff's plant, Glen Mills, Pennsylvania, on June 12, 1940—the day following the date on which use-plaintiff contends McDermott first ordered the stone. In corroboration of Wilson, McDermott admits he notified the Highway Department officials at the time when he ordered the stone to be shipped. Moreover, witness Richter, Highway Department's inspector, testified that he was on the job daily, that the roadbed was not ready for stone on May 17, 1940, and if the stone had been ordered on that day and had not been received within five days he would have reported the fact to his superiors. He made no such report. In the light of this discussion of the evidence, I make additional findings of fact.

7. McDermott did not notify use-plaintiff on May 17, 1940, to commence shipments of stone immediately.

8. Such notification was given no sooner than June 11 or 12, 1940.

9. McDermott was not ready to receive stone until he had ordered it.

*Discussion Renewed.* The questions urged by the parties as to salesman Souders' actual or apparent authority (1) to modify the written contract or (2) his limited agency to take and transmit orders to use-plaintiff for acceptance or rejection, only become pertinent on the basis that McDermott did order shipments through Souders on May 17, 1940, and Souders then promised use-plaintiff would ship in accordance with McDermott's request.

At the outset, it is obvious Souders had no authority—apparent or implied —to bind use-plaintiff on the original con-

---

plaintiff's dull season. McDermott was slow in completing the job and the road bed was not finished and accepted by the State until July 12, 1940—the summer months being use-plaintiff's peak season to fill orders.

[3] Nields, J., in Motor Parts Co. v. Bendix Home Appliances, Inc., D.C.Del., 36 F.Supp. 649, 651: "The existence of an oral contract, the terms of which are in contradiction of a prior written contract between the same parties, must be established by clear and convincing evidence."

Pennewill, C. J., in Josloff v. Falbourn, 2 W.W.Harr. 433, 125 A. 349, 350: "While an executory written agreement may be rescinded by a subsequent unwritten one, it is well settled that nothing short of positive and convincing proof will suffice to establish the fact of such rescission against a party who denies it, and seeks to sustain it. Thompson v. Stone, 43 Pa.Super. [69], 76; Quinn v. Parke, 9 Wash. 136, 37 P. [288], 289."

tract.[4] Even an agent, who has authority to enter into a contract on behalf of the principal, does not have authority to alter its terms.[5] 1 Agency Restatement § 51, Comment c on Clause (b), and Comment d. In addition, § 166 announces: "If a third person has notice of a limitation of an agent's authority, he cannot subject the principal to liability upon a transaction with the agent in violation of such limitation." While McDermott produced witnesses who testified that they had informally on many occasions given orders to salesman Souders to ship materials, which were later delivered in accordance with such orders, not one of these ventured to say that they had entered into written agreements with use-plaintiff which were later modified by parol commitments on Souders' part. Use-plaintiff's officers, of course, denied Souders' authority to bind the stone company by original agreements and a fortiori by any modifications thereof.

Clearly, Souders was a salesman for use-plaintiff in Delaware, as well as in Pennsylvania and New Jersey. As such, he was merely an agent to solicit orders and transmit them to his principal for approval or rejection. A traveling salesman is restricted to certain and definite jural relations. The fact that one is a traveling salesman employed to sell products warrants no inference that by virtue of such employment he is authorized to make a contract of sale binding his principal without approval or acceptance. 2 C.J.S., Agency, § 114, p. 1317; Deane v. Big Spring Distilling Co., 138 Md. 388, 113 A. 891; Riverside Coal Co. v. Elman Coal Co., 114 Conn. 492, 159 A. 280; C. F. Bally, Ltd., v. Quaker City Corp., D.C., 271 F. 957. When the contract for the sale of stone was executed by McDermott, in the instant case, and forwarded by Souders to his principal for acceptance or rejection, the agent's authority with respect to that particular contract ceased. One year after the contract had been accepted, Souders was not designated as the person to whom shipping orders were to be given for he had no authority relating to shipments. An agent who negotiates a contract is not generally the person to whom the other party to such agreement is to give notice in connection therewith. 1 Agency Restatement § 268, Comment b, pp. 595, 596; Foell Packing Co. v. Harris, 127 Pa.Super. 494, 499, 193 A. 152, 154; Doll v. Ryder, 118 Pa.Super. 7, 13, 178 A. 320, 323.

Absent evidence of Souders' authority to receive and accept shipping orders modifying the written contract, defendants' counter-claim for damages based on failure to fulfill such shipping instructions given to the salesman on May 17, 1940, is, of course, without merit.

(b) But, in any event, I conclude defendants have failed to prove $6,000 of damages in support of their counterclaim.

McDermott's alleged items of damage are: equipment rental, gas and oil for equipment, extra labor and penalties imposed by the State Highway Department for failure to complete the roadbed according to schedule—all, in turn, resulting from use-plaintiff's failure to deliver the stone on time. The burden rested at all times on McDermott to show not only a breach of contract but also loss flowing therefrom would not have incurred except for use-plaintiff's conduct. 15 Am.Jur. Damages, p. 768; 25 C.J.S., Damages, § 144, p. 788; Osage Oil & Ref. Co. v. Chandler, 2d Cir., 287 F. 848.

McDermott first asserted his damages on November 13, 1940, by letter to use-plaintiff claiming $2,120. In his deposition taken on June 23, 1942, his summation of damages came to $6,204.90. And, while the pleadings seek $6,000 as counter-claim, defendants in their brief restrict their damages to $3,096.94.

At trial, upon pressing cross-examination on the part of Mr. Arsht, McDermott eliminated $1,374.30 of alleged damage respecting the rental of a crane. Claimed damages for the rental value of a motor grader and tractor-grader for two months at $350 a month for each machine, are items of pure fiction since he owned such equipment. In support of gas and oil expense, not a single bill, statement or duplicate charge slip from suppliers, indicating that such fuel was used by McDermott on the roadbed in question between May 17

[4] See, e. g., paragraph seventh of contract: "Acceptance: This contract shall not be binding upon the Seller until accepted at Easton, Pennsylvania, by an officer of the Seller."

[5] An agent cannot prove his authority by his own acts or declarations absent corroboration. Seward et al. v. Nissen, D.C.Del., 2 F.R.D. 545.

and June 17, 1940, was introduced to support such claim.

Defendants seek to charge use-plaintiff with penalties for 30 days at the rate of $15 a day, imposed on McDermott by the State Highway Department for failure to complete the construction of the stated highway in accordance with contract. The evidence in support of this item is deficient because defendants failed to show whether the 20½ days penalties imposed by· the Highway Department from the period of January 2, 1940, through July 1, 1940, could be allocated to any day or days within the period from May 17 to June 17, 1940.[6]

The evidence is obviously insufficient to support any claim for damages based on McDermott's alleged extra payroll resulting from delays in delivery. Defendants attempted to assert as an item of damage McDermott's loss of time while awaiting the shipments of stone. No evidence was adduced in support of this item. In any event, he was the contractor; he did not pay himself wages. He looked to make profit from the difference between the cost to him of labor and materials and the contract price.

▆▆▆▆ (c) Moreover, defendants are unable to sustain the alleged damages because McDermott utterly failed to mitigate such damages. In fact, he made no effort to mitigate. He was familiar with the price of Traffic-Bound Crushed Stone. He knew use-plaintiff's price of $2.01 per ton was that currently charged by other companies during May, June and July of 1940. He was apprised that four stone suppliers were available in the territory. He made no effort to buy stone from any of them.

Under such circumstances, defendants were under the duty to attempt, at least, to minimize their potential damages. 15 Am.Jur. Damages, p. 420; 25 C.J.S., Damages, § 32, p. 499; Wise v. Western Union Tel. Co., 7 W.W.Harr. 209, 216, 181 A. 302, 305 (Rodney, J.: " * * * where one has been injured by the wrong of another, such injured person is under a duty to make a reasonable effort to minimize the damages liable to result from such injury."). That the Pennsylvania rule is in accord, see Robinson v. Ungerleider, 313

Pa. 301, 169 A. 886, 888. Thus, it becomes necessary to make still further findings of fact.

10. McDermott, familiar with the price of Traffic-Bound Crushed Stone, knew that use-plaintiff's price was the same as charged by other stone suppliers during May, June and July, 1940.

11. Although there were, at least, four other stone suppliers within the territory, during the period May–July, 1940, McDermott made no effort to cancel his orders to use-plaintiff or to buy stone from any of the other suppliers.

12. McDermott owned the equipment used by him on the job.

13. He incurred no special expense for oil or gas.

14. He failed to prove specific penalties imposed by the State Highway Department for the period May 17 to June 17, 1940.

15. He failed to prove extra payroll expense, or loss of personal wages throughout the period.

*Interest.* Use-plaintiff seeks interest on $9,124.80, i. e., on $6,174.12 from July 31, 1940, and $2,950.68 from August 31, 1940.

▆▆▆ Accepted by use-plaintiff at Easton, this is a Pennsylvania contract. Goodrich, Conflict of Laws, § 104, n. 24. Moreover, the contract was to be performed in Pennsylvania since use-plaintiff's responsibility for lading of cars ceased with proper delivery to the carrier at Glen Mills.

▆▆▆▆ It is settled almost everywhere that the right to interest as part of the damages for breach of contract is governed by the law of the place of the making and performance of the contract for the reason that the measure of damages for breach is determined by the lex loci, Restatement, Conflict of Laws § 413. Under Delaware law, the award of moratory interest, as an incident of damages for breach of a contract to be performed in Pennsylvania, involves a matter of substantive law and, under the proper conflict of laws rule, must be determined by the law of Pennsylvania. Stentor Electric Mfg. Co. v. Klaxon Co., 3rd Cir., 125 F.2d 820. Under Pennsylvania law, interest would be allowed on a sum due for goods sold and delivered.

---

6 The State Highway Department's official estimate book, disclosing the actual days for which McDermott had been penalized, was available to defendants throughout trial. The Assistant Chief Engineer of the Highway Department was in the court room and could have testified about the contents of the estimate book. Defendants inexplicably failed to utilize both the book and the witness.

Gloeckler v. Imrie, 118 Pa.Super. 441, 179 A. 883.

So, finally, I have arrived at the following conclusions of law:

1. Assuming defendants' contention that use-plaintiff's salesman, Souders, orally agreed with McDermott on May 17, 1940, to ship 12 carloads of stone daily instead of 300 tons as provided in the written contract, use-plaintiff is not bound thereby, since Souders did not have authority, either actual or apparent, to modify the written contract.

2. Souders, once the sales contract had been executed, did not have authority, either actual or apparent, to receive shipping notifications or instructions on use-plaintiff's behalf. If any shipping instructions were given to Souders on May 17, 1940, they were given to a person who was not authorized to receive or act upon them and, therefore, are not binding upon plaintiff.

3. Use-plaintiff did not breach the original written contract to ship 300 tons of stone daily. In any event, defendants have not alleged any such breach, nor have they alleged any damage to them resulting from any breach of the original contract.

4. The burden of proof is upon defendants to establish the extent of their damage resulting from use-plaintiff's alleged breach. Defendant must show not only that McDermott suffered loss because of use-plaintiff's alleged breach, but also that such loss would not have been incurred except for use-plaintiff's wrongful conduct.

5. Damages which are uncertain, contingent or speculative cannot be made the basis of recovery. In order for damages to be recoverable they must be susceptible of ascertainment as to amount within a reasonable degree of certainty. The damages must be certain both in their nature and in respect of the cause from which they proceed.

6. Even if it be assumed that use-plaintiff breached the contract, nevertheless defendants have failed in their burden of proving with that degree of certainty required to support a recovery that Mc-Dermott suffered loss because of use-plaintiff's alleged breach of contract and that such loss would not have been incurred except for the breach.

7. Defendants were under a duty to prevent or minimize their potential damages. Defendants failed in this duty and therefore cannot recover.

8. Plaintiff is entitled to recover judgment against defendants for $9,124.80 with interest upon $6,174.12 from July 31, 1940, and with interest upon $2,950.68 from August 31, 1940.

9. Defendants' counter-claim must be dismissed.

Let judgment for use-plaintiff be entered accordingly.