## Reiff v. Hall

*Thomas J. Calnan, Jr.,* for plaintiffs.
*W. Hamlin Neely,* for defendants.
*William S. Hudders,* for garnishee.

KOCH, P. J., March 10, 1964.—On May 24, 1963, plaintiffs, Alexander Reiff and Shirley Reiff, owners of premises at 40 North Seventh Street, Allentown, Pennsylvania, entered judgment on a lease in the amount of $2,200 against the Allen Pitt Securities Co.,[1] successor to Sherman Hall, Inc., which is engaged in the securities business. Three days later upon praecipe of plaintiffs, an attachment execution was issued against the First National Bank of Allentown, garnishing a checking account of Allen Pitt which contained a balance of $6,662.94.

John Hall and his wife, Wilhelmina, presented a petition for leave to intervene in this proceeding and in pursuance thereof we issued a rule on plaintiffs to

---

[1] Hereinafter referred to as Allen Pitt.

show cause why the intervention should not be allowed and to dismiss the attachment execution to the extent necessary to pay the claim of petitioners in the amount of $5,992.56. Thereafter at a hearing it was stipulated that the court was to decide the merits of the petition to intervene and that the court's disposition of this petition would determine the respective rights of petitioners, the execution plaintiffs, and the execution defendants to the fund held by The First National Bank.

As a result of the hearing it is clear that there is no dispute as to the facts and consequently it becomes unnecessary to set forth formal finding of facts.

The testimony indicates that 50 percent of the stock of Allen Pitt is owned by Thomas Hall, its president, who is also the son of the intervening plaintiffs. At various times John Hall utilized the services of Allen Pitt to buy and sell stock for his account. On April 19, 1963, John Hall, the owner of 150 shares of Magnavox Corporation, requested Allen Pitt, through his son Thomas, to sell the shares and retain the proceeds of the sale which were to be used to purchase common stock of the Pennsylvania Power & Light Company when the shares could be acquired at $32 per share.

Pursuant to the instructions of John Hall, Allen Pitt, as broker, sold the Magnavox shares and received $5,992.56 as the net proceeds which were deposited in the firm checking account at The First National Bank. This deposit was made on April 25, 1963.

The market price of Pennsylvania Power and Light Co. shares never dropped as low as $32 per share and on May 20, 1963, John Hall, the intervening plaintiff, requested Allen Pitt, through Thomas Hall, to deliver to him the funds derived from the sale of Magnavox. On Sunday, May 26, 1963, Thomas Hall delivered to his father a draft of Allen Pitt in the amount of $5,-992.56. This draft was dated May 24, 1963, and on

Monday, May 27, 1963, John Hall took the draft to his bank, The Lehigh Valley Trust Company, and deposited it in his checking account. This draft was not honored by The First National Bank in view of the attachment execution which was served upon it at 10:25 a.m. on May 27, 1963.[2] Thereafter the intervening plaintiffs filed their petition to intervene.

It is obvious that the present balance of the fund, $6,432.67, is not sufficient to pay the amount of the judgment as well as the claim of the intervening plaintiffs.

At the conclusion of the hearing we entered an order making the rule to show cause why the intervention should not be allowed absolute.

The rather unusual facts give rise to the question whether the intervening plaintiffs' rights are those of the beneficiaries of a constructive trust or of a general creditor.

We must commence with the general proposition that the relationship between John Hall and Wilhelmina Hall and their son Thomas was that of principal and agent. In C. Clothier Jones v. Adams, 98 Pa. Superior Ct. 246, 250, Judge Baldrige said:

"The authorities are practically unanimous in holding that the primary and essential feature underlying the relations of a broker to his employer is that of an agent, and the rules of law applicable to principal and agent govern their respective rights and liabilities, and the broker is subject to the liabilities of an agent in requiring him to exercise fidelity and good faith toward his principal in all matters that fall within his sphere of employment: Richardson v. Shaw, supra [209 U. S. 365]; Skiff v. Goddard (Conn.), 26 Atl. Rep. 874; Content v. Banner, 184 N. Y. 121; 4 R.

---

[2] Subsequent to this date a draft to the Internal Revenue Service in the amount of $230.27 was honored by the garnishee with the consent of the execution plaintiffs, thus reducing the fund to $6,432.67.

C. L. 247; 9 C. J. 515; Cook on Corporations, 6th Edition, Vol. 2, p. 1145; Story on Agency, 9th Edition, Section 28; Sibbald v. Bethlehem Iron Co., 83 N. Y. 378."

This legal relationship commenced on April 19, 1963, and the customers, John and Wilhelmina Hall, had the right at any time to demand of their agent a redelivery of the funds entrusted to him: Robinson v. Ungerleider, 313 Pa. 301.

The testimony indicates that the checking account was used by the broker for general business purposes and no effort was made to segregate the Hall funds. This exercise of control was unauthorized. Generally, a constructive trust arises out of circumstances evidencing either fraud, accident, mistake, duress or undue influence: 38 P. L. Encyc. Trusts §102. Plaintiffs contend that none of these circumstances is present but their position overlooks two additional legal propositions: First, a constructive trust may arise against one who has been unjustly enriched even though he has been guilty of no wrongdoing: Chambers v. Chambers, 406 Pa. 50. Second, a constructive trust will arise wherever necessary to meet the demands of justice, morality, conscience and fair dealing: Peoples-Pittsburgh Trust Company v. Saupp, 320 Pa. 138; Fox v. Fox, 125 Pa. Superior Ct. 541.

The existence of the confidential relationship between the parties is also of impelling significance for the reason that in such a situation the law will charge a party who obtains title to the property with a constructive trust: 38 P. L. Encyc. Trusts §107.

A total evaluation of the facts in this case leads to the conclusion that Allen Pitt is a constructive trustee of the intervening plaintiffs' funds.

The final question is whether Allen Pitt's judgment creditors, plaintiffs, have priority rights in the fund.

The general rule appears to be that where he has not waived his rights or estopped himself to claim them, the rights of a cestui que trust in the trust fund or property in the hands of the trustee or the latter's representative or assignee ordinarily are superior to the claims of general creditors of the trustee in his personal capacity: 39 P. L. Encyc. Trusts, §383; 90 C. J. S. 185.

In Restatement, Restitution §168(1), it is provided as follows:

"Where a person holding property in which another has a beneficial interest transfers title to the property in violation of his duty to the other, the transferee holds the property subject to the interest of the other, unless he is a bona fide purchaser."

Plaintiff in the instant execution is not a bona fide purchaser although he has no notice of the trust: Restatement, Trusts §308.

As to what constitutes value we are of the opinion that the comment (j) to §173 of the Restatement, Restitution is applicable:

"Where a person holds property subject to a constructive trust, his creditors are not purchasers for value and are subject to the constructive trust, except as stated in Comment k. Thus, if a person who holds property subject to a constructive trust makes an assignment for the benefit of his creditors, the assignee is not a bona fide purchaser of the property (see Restatement of Trusts, §306). So also, if he becomes bankrupt, the trustee in bankruptcy is not a bona fide purchaser of the property (see Restatement of Trusts, §307). So also, a creditor who attaches the property or obtains and records a judgment or levies execution upon the property is not a bona fide purchaser, although he had no notice of the constructive trust (see Restatement of Trusts, §308). This is true whether the property is land, or a chattel, or a chose in action,

whether the chose in action is in the form of a negotiable instrument or not."

We conclude that the rights of the intervening plaintiffs are superior to those of the execution plaintiffs.

*Order*

Now, March 10, 1964, it is ordered and decreed that the attachment execution issued in the above matter be dissolved to the extent necessary to pay the claim of John Hall and Wilhelmina, intervening plaintiffs, in the amount of $5,992.56, together with interest thereon from May 27, 1963.